UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EARL DONALD BAKER,<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>SMITH & WESSON CORP.,<br><br>　　　Defendant. | Case No. 18-cv-03847<br><br>Honorable Edmond Chang |

**PLAINTIFF'S RESPONSE TO OPPOSITION TO DEFENDANT'S
MOTION TO TRANSFER**

EARL BAKER, by and through his attorney's, Lee & Breen, LLC, hereby responds in opposition to Defendant's Motion to Transfer and further states as follows:

In its Motion to Transfer, which should be decided based on a set of discrete, objective facts, Defendant tellingly resorts to a diversionary tactic of maligning Plaintiff's character, portraying him as unstable, "harassing," and "threatening."[1] The facts relevant to each of the considerations with respect to this Motion to Transfer are referenced in the discussion below.

---

[1] Such could not be farther from the truth. Plaintiff is a successful business man, having been named to the Business Advisory Counsel of the US Congress. Plaintiff is hard-working and follows the rules. He is a boy scout. What Defendant did not like is that Plaintiff refused to "toe the line" and ignore the illegal conduct that was going on around him. He also refused to "let it go" even when he was clearly given signals to do so by management of Smith & Wesson.

Presumably, Defendant engages in *ad hominem* attacks as a tactic to manipulate the Court, *sotto voce*, to rid itself of an "unpleasant litigant". While Defendant's mischaracterization of Plaintiff's "character" is wrong, it is telling that Defendant has to resort to such a tactic. As will be seen, Defendant is following the cynical adage: when the facts and the law both are against you, attack the person. Because Defendant's personal attack on Plaintiff is irrelevant to the current motion, Plaintiff will not respond in kind in the body of his Response. However, if the Court is interested in getting a counter-view of "reality" as presented by Defendant, Plaintiff invites the Court to review Appendix A, attached hereto.

1

I. **LEGAL ARGUMENT**

Defendant has brought its motion to transfer pursuant to 28 U.S.C. § 1404(a), which provides that venue may be transferred to any other district where the case may otherwise have been brought "for the convenience of parties and witnesses, in the interest of justice." In evaluating the convenience of the parties and witnesses, courts should consider the plaintiff's choice of forum, the location of the material events, the residence of the parties, the parties relative ability to bear the expense of a trial in a particular forum, and the relative ease of access to evidence and witnesses in each forum. *Moore v. AT&T Latin A. Corp.* 177 F.Supp.2d 785, 789 (N.D. Ill. 2001). In determining the interests of justice, courts should consider the speed at which the case will proceed to trial, the court's familiarity with the applicable state law, and the relationship of the parties to and the desirability of resolving the controversy in a particular community. *Central States, Se. & Sw. Areas Pension Fund v. Mills Investments, LLC*, 2011 WL 4901322, *2 (N.D. Ill. 2011).

Defendant bears the burden of establishing that the transferee forum is ***clearly more*** convenient. *Id*. at 219-220. Further, "[w]here the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). Because Defendant has failed to meet its burden, the Court should deny Defendant's Motion to Transfer.

Plaintiff's Choice of Forum

Generally, Plaintiff's choice of forum is given great deference, particularly where it is also Plaintiff's home forum. *In re National Presto Indus.*, 347 F.3d 662 (7th Cir. 2003). "Unless the balance is strongly in favor of defendant, the plaintiff's choice of forum should rarely be disturbed." *Ariel Investments, LLC v. Ariel Capital Advisors, LLC*, 2015 U.S. Dist. LEXIS 187800, *11 (N.D. Ill. 2015). Here, unlike the cases cited by Plaintiff, *Chicago, R.I. & P.R. Co.*

2

*v. Igoe*, 220 F.2d 299 (7th Cir. 1955) and *Schwarz v. National Van Lines, Inc.*, 317 F.Supp. 829 (N.D. Ill. 2004), the Northern District of Illinois is Plaintiff's home forum.[2]

Defendant argues that a plaintiff's home forum should not be given such deference if it is not the location of the events at issue, citing to *Schwartz* and *Igoe*. The exact same argument was made by the defendant in the more recent case of *Ariel Invs., LLC v. Ariel Capital Advisors LLC.*, 2015 U.S. Dist. LEXIS 187800, *11 (N.D. Ill. 2015). The defendant in *Ariel Investments* also cited to *Igoe* in support of its argument. That court, however, rejected defendant's analysis and distinguished *Igoe* on the basis that the plaintiff in *Igoe* had not filed in her home forum. The court noted that "[defendant] cites [*Igoe*] for the proposition that little or no weight is given to the plaintiff's forum choice where the conduct complained of took place outside that forum. *Igoe*, however, was a case in which the plaintiff sued outside her home forum. The more recent decisional law the Court has cited makes it clear that *Igoe* **does not carry much if any weight outside that context**." (Emphasis added.) The *Ariel Investment* court's reasoning would apply to cases such as *Schwartz* as well. As a more recent Northern District case law rejected Defendant's assertion that the Plaintiff's home forum should not be given "great deference," this factor weighs strongly in favor of this court retaining venue.

Location of Material Events

Although Defendant is correct in stating that Plaintiff's employment with Defendant occurred in Massachusetts, it is not true that "all of the allegations giving rise to Plaintiff's claim" occurred there. Some of the illegal conduct that Defendant engaged in and which helped form

---

[2] The additional case cited by Plaintiff, *Jaramillo v. DineEquity, Inc.*, 664 F.Supp.2d 908 (E.D. Ill. 2009) is also distinguishable from the current matter as that case involved a class action suit. Courts generally give less deference to the plaintiff's choice of forum in class action cases in order to guard against forum shopping and to avoid inconvenience to some plaintiffs in favor of the named plaintiff. *Id*. at *10.

3

Plaintiff's reasonable belief of on-going SOX violations occurred in Rhode Island and Maine.[3] See Declaration of Earl Baker, attached as Exhibit A, ¶¶ 57=58. Nevertheless, Plaintiff concedes that this factor weighs in favor of transfer.

Residence of the Parties

Plaintiff is a resident of the state of Illinois. Defendant, a corporation, is deemed to be a resident of any state where the Defendant is subject to personal jurisdiction. Illinois' long arm statute provides that an Illinois court can "exercise jurisdiction in any action arising within or without this State against any person who: … (4) is a natural person or corporation doing business within this state." 735 ILCS 5/209(b)(4). Further, it has been recognized that a court may exercise general jurisdiction over a defendant if the defendant's activities in the state are "substantial or continuous and systematic," "even if the cause of action is unrelated to those activities." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). As Defendant sells a significant amount of products in Illinois, and indeed nationwide, it cannot, and apparently does not, contest that it is subject to general jurisdiction in the state of Illinois. As such, both parties are "residents" of the state of Illinois and this factor weighs against transfer.

Parties Relative Ability to Bear the Expense of Trial in a Particular Forum

In evaluating the convenience of the parties, "the court should consider their respective residences and their ability to bear the expense of litigating in a particular forum." *Brandon Apparel Group v. Quitman Mfg. Co.*, 42 F.Supp.2d 821 (N.D. Ill. 1999).

Here, Defendant has not alleged, nor could it allege, that it is in a weaker financial position or in unable to bear the extra expense of travel to Illinois. According to its 2016 Annual Report,

---

[3] Although S&W abused the discovery process in the administrative proceeding while Plaintiff was acting pro se, some discovery did take place and Plaintiff was able to obtain some emails which are attached to Plaintiff's Declaration. In light of the fact that Plaintiff is now represented and the MIDP program, presumably, Defendant will not be able to abuse the discovery process in this matter as it did in the administrative proceeding.

4

Smith and Wesson Holding Corporation and its Subsidiaries had a net income of $727,908,000 for that year. Plaintiff's current income is $52,000.00 per year. Because Defendant is clearly in a "stronger financial position" than Plaintiff, this fact alone clearly weighs against transfer. *Images of the World, Inc. v. Continental American Industries, Inc.*, 2005 U.S. Dist. LEXIS 18879, *20 (2005) ("Since Defendant is in a stronger financial position than [Plaintiff], it would be less burdened than [Plaintiff] if the case was transferred. This factor weighs in favor of retention.")

Further, contrary to Defendant's unsupported assertion that "Plaintiff would not suffer any prejudice by transferring" the matter, it would be financially burdensome on Plaintiff were this matter to be transferred to Massachusetts. After his termination by Defendant, Plaintiff spent ten months applying to literally hundreds of jobs. Plaintiff finally got a job as a non-salaried machinist and currently makes $52,000 per year. See Exhibit A, ¶38. On two separate occasions since his termination, Plaintiff and his wife were forced to move into his daughter's basement in Illinois. Exhibit A, ¶39.

Plaintiff and his wife currently pay $1,500.00 for rent and pay $3,000.00 for other monthly expenses. Plaintiff has also had significant recent medical expenses. After S&W fired Plaintiff, his wife began grinding her teeth and broke her bridge. Plaintiff has had two surgical procedures on his back due to a herniated disc. Plaintiff and his wife do not have dental insurance and their health insurance coverage only covers 80% of surgical procedures. In the last six months, the family's out-of-pocket dental and medical expenses have exceeded $27,000.00. Exhibit A ¶¶40-44.

Plaintiff has also incurred significant legal expenses since his wrongful termination by Defendant. Plaintiff originally retained the Employment Law Group to represent him in the action against S&W. Plaintiff paid Employment Law Group $42,000.00. However, the firm withdrew

5

in from the representation in January of 2017. Exhibit A, ¶¶ 45-46. Plaintiff conducted a nationwide search for new counsel but was not successful. He represented himself in the administrative proceedings for fourteen months and incurred another $18,000.00 in litigation costs. Exhibit A, ¶47.

Finally, after talking to eighteen different firms, in November of 2017 Plaintiff was introduced to Lee & Breen through a mutual acquaintance. After months of discussions, Lee & Breen agreed to represent Plaintiff with no upfront retainer. Exhibit A, ¶¶48-49. Given Plaintiff's employment situation, the litigation expenses he has already incurred, and his families' health problems, Plaintiff does not have the funds to provide any retainer fees or to cover the costs of the vast majority of expenses that will be incurred in order to proceed with this litigation. Exhibit A, ¶50.

If the matter is transferred, Plaintiff would bear the expense of finding and retaining new counsel. After reaching out to eighteen different firms about representation before finding one that was willing to take on the case with no retainer or upfront costs, it is unlikely that Plaintiff could find new counsel in Western Massachusetts.[4] Further, Plaintiff has developed a strong working relationship with its current, chosen counsel and should not be forced to select new counsel at this stage in the proceedings. It would also be financially ruinous if Plaintiff was forced to incur the additional expense of local counsel. As a practical matter, that would be the death knell for Plaintiff's right to have his day in Court. Plaintiff would not be able to continue to litigate. It is clear that the parties "relative ability" to bear the expense of a trial in Illinois versus a trial in Massachusetts weighs against transfer.

---

[4] Western Massachusetts is known as the gun capital of the world. It is headquarters to Ruger, Colt, Sturm, Camfour, Kahr, and Savage in addition S&W, one of the largest employers in Massachusetts.

6

Ease of Access to Evidence and Witnesses

With respect to ease of access to evidence, Defendant has not suggested that the evidence in this matter would be difficult to transport from Massachusetts to Illinois. Indeed, Plaintiff did not work for Defendant for that long of a period, so the documents relative to this matter cannot be particularly burdensome. Further, "given the way records are maintained and produced in litigation these days, the site of the lawsuit has little impact on the convenience of record production." *Ariel Investments, Inc. v. Ariel Capital Advisors, LLC*, 2015 U.S. Dist. LEXIS 187800, *12 (N.D. Ill. 2015). As such, this factor is neutral with respect to transfer. *NDX Advisors, Inc. v. Advisory Fin. Consultants, Inc.*, 2011 U.S. Dist. LEXIS 60147, *10 (2011).

With respect to witnesses, Defendant does not even bother to identify any specific witnesses or where they reside and in fact misrepresents the relevant facts. Defendant states "[h]ere, all of the relevant non-party witnesses in this case reside in the District of Massachusetts, worked at S&W's facilities in Springfield, Massachusetts, and/or conducted business with S&W in Springfield, Massachusetts." Given it is Defendant's burden to establish that the balance "strongly favors" transfer and Defendant's failure to give any specific examples, this Court should find that this factor weighs against transfer.

Further, even if the convenience of witnesses is considered, the Court should weigh the convenience of non-party witnesses more heavily that the convenience of witnesses within the control of the parties, because party witnesses are presumed to appear voluntarily. *First National Bank v. El Camino Resources, Ltd.*, 447 F.Supp.2d 902, 913 (N.D. Ill. 2006). Here, Plaintiff has, at this time, identified the following individuals as likely to testify:

7

- Plaintiff (Illinois resident)[5]

- Lawrence Flatley – Plaintiff's direct supervisor (former S&W employee, "retired" sometime after S&W fired Plaintiff; upon information and belief currently resides in Massachusetts)

- Daniel Fontaine – (current S&W employee)

- Robert Cicero (current S&W employee)

- Ed Suaraci – HR representative in charge of investigation into Plaintiff/Flatley issues and also involved in Pioneer investigation – (former S&W employee, upon information and belief currently resides in Massachusetts)

- Anne Bruce – head of HR during Plaintiff's employment with Defendant (former S&W employee, upon information and belief now resides in Nevada)

- Kathy Salvador – (S&W employee)

- Ann Glica – (S&W employee)

- Robert Francis –Vice President of S&W familiar with Plaintiff's work (former S&W employee, upon information and belief currently resides in Connecticut)

- Various Rhode Island Carbide employees with knowledge of how S&W employees with improper relations that Pioneer was "cheating" S&W.

- Various employees of S&W's Houlton, Maine facility with knowledge of how S&W employees with improper relations and Pioneer were "cheating" S&W. (S&W employees.)

---

[5] Although the deposition never took place, Defense counsel had no issue with noticing up Plaintiff's deposition at its Chicago office in the administrative proceeding while Plaintiff proceeded *pro se* in that matter. Indeed, in this matter Defense counsel's Chicago office has already filed an appearance.

Of the non-S&W employees, Plaintiff, Bruce, Francis and the Rhode Island Carbide employees, live outside of Massachusetts. Flatley and Suraci live in Massachusetts. This factor weighs against transfer.

Likelihood of a Speedy Trial

The "interest of justice" prong, analysis "relates to the efficient functioning of the courts, not the merits of the underlying dispute." *Schwartz*, 317 F.Supp.2d at 837. The factors "traditionally" considered include "determining where the litigants are most likely to receive a speedy trial and having judges familiar with the applicable law try the case." *Id*.

With respect to the "speedy trial" analysis, "two statistics bear significant relevance," the median number of months from filing to disposition and the median number of months from filing to trial. *Id*. Here, 2018 Federal Court Management Statistics show that the median months from filing to disposition in Illinois is 8.1 while in Massachusetts its 17.6. However, the median number of months from filing to trial for Illinois is 34.0 while for Massachusetts its 31.3. (See attached Exhibit B). As such, these numbers are neutral with respect to transfer.

In addition, these statistics are not the only relevant facts to consider in the "interest of justice" analysis. The Northern District of Illinois has found that Illinois has "a significant interest in providing a forum for its residents to protect their" rights. *Ariel Invs.*, 2015 U.S. Dist. LEXIS 187800 at *12. Further, these general statistics may be of "limited utility" given their general nature and other forum specific factors may be more relevant. *Id*. (type of case and specific judge may be considered). In that regard, Plaintiff notes that as of June 1, 2017, the Northern District of Illinois is participating in the Mandatory Initial Discovery Pilot Program ("MIDP"). The purpose of the study is "to test the use of robust mandatory initial discovery as a means of reducing cost and delay in civil litigation." See Mandatory Initial Discovery Users' Manual for the Northern

9

District of Illinois. The MIDP program most likely will result in a decrease in both of the statistics cited above for the Northern District of Illinois. Because the District Court for the District of Massachusetts is not participating in the program, the statistics for that court will presumably remain the same. Further, for parties like Plaintiff, who have very limited means but who are going up against adversaries with unlimited resources, the MIDP[6] could mean the difference between being able to having his day in court versus being choked out by scorched earth tactics by their opponents. When the MIDP is added into the Court's consideration, the "efficient functioning" of the court clearly favors retention of this matter by the Northern District of Illinois.

Familiarity with Applicable Law

Finally, the Court should consider the trial judge's familiarity with the applicable state law. Plaintiff has asserted a claim for wrongful termination in violation of Massachusetts public policy. Generally, "federal courts have experience applying the law of foreign states." *Jaramillo*, 664 F.Supp.2d at 917. As such, the mere assertion of a claim under Massachusetts law does not necessarily favor transfer. Further, because Defendant has not identified any complex or unsettled issues of state law such that it would be advantageous for a particular court to try the case, this factor is neutral with respect to transfer. *First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F.Supp.2d 902, 914 (N.D. Ill. 2006) (noting that a court's familiarity with state law is a neutral factor where the law in question is neither complex nor unsettled).

---

[6] Lead counsel for both parties have already engaged in a Rule 26 conference and agreed that this matter is ideal for MIDP. The Parties have already engaged in written discovery in the administrative proceeding before an ALJ. Plaintiff was pro se in that matter, and meet and confer communications from that matter are telling. Plaintiff sought all documents and emails "about him", meaning his job performance, SOX whistleblowing on illegal conduct in connection with Pioneer, S&W's investigation of that SOX claim, and retaliatory adverse employment decisions. Defense counsel interpreted "about him" literally like a computer and stonewalled Plaintiff. That is precisely the type of gamesmanship that MIDP was intended to put the kibosh on.

## II. CONCLUSION

Plaintiff's choice of forum, given that it is his home forum, should be given great deference in this matter unless Defendant proves that the balance of factors otherwise "strongly favors" transfer. Here, of the other factors which should be considered by this court, only one favors transfer (location of material events), most (residence of the parties, relative ability to bear to expense of trial, convenience of witnesses and likelihood of a speedy trial) favor retention of this matter, and the remaining factors (ease of access to evidence and familiarity with applicable law), are, at best, neutral. Defendant has not met its burden of establishing that the District of Massachusetts is "clearly more" convenient venue than the Northern District of Illinois or that the balance of factors so strongly favors transfer that Plaintiff's choice of his home forum should be disturbed. Defendant's motion should be denied.

Respectfully submitted,

/s/ John Y. Lee

John Y. Lee
Lee & Breen, LLC
188 Industrial Drive, Suite 403
Elmhurst, IL 60126
Tel.: (312) 241-1420
Facsimile: (630) 748-0399
Email: jlee@leebreenlaw.com