UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EARL DONALD BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 18-cv-03847 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| SMITH & WESSON CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Earl Baker has sued Smith and Wesson Corp. (S&W), alleging that S&W retaliated against him in violation of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, the Dodd-Frank Wall Street Reform & Consumer Protection Act, 15 U.S.C. § 78u-6(h)(1), and Massachusetts public policy. Baker alleges that he was fired after he reported conduct that he believes was illegal.[1] S&W moves to transfer the case to the District of Massachusetts, where S&W is headquartered and, more importantly, where Baker worked. Baker prefers to litigate in the Northern District of Illinois, where he currently lives. For the reasons discussed below, S&W's motion to transfer venue is granted.

**I. Background**

Starting in February 2013, Earl Baker worked as a Cell Coordinator of Tooling for S&W, which is a firearm manufacturing company headquartered in Springfield,

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. § 1331. Supplemental jurisdiction covers the Massachusetts law claims. 28 U.S.C. § 1367.

1

Massachusetts. R. 1, Compl. ¶¶ 3, 7.[2] Baker worked at the company's Springfield facility. *See id.* ¶ 7.[3] Around two weeks into his tenure, Baker allegedly noticed that many contracts were being awarded to a tool supply company called Pioneer. *Id.* ¶ 8. He also heard rumors that Pioneer was soliciting bribes from S&W and that S&W was underbilling Pioneer. *Id.* ¶¶ 10-12. Concerned about the legal ramifications of these practices, Baker approached his supervisor, Larry Flatley, about his suspicions. *Id.* ¶ 14.

In February 2014, shortly after Baker reported his concerns, he received his first performance review from Flatley. *Id.* ¶ 15. Baker was evaluated as simply "meeting expectations." *Id.* During a discussion of this performance review, Flatley allegedly made a remark about Baker thinking he was "more virtuous than others." *Id.* ¶ 16. Baker reported these remarks, other derogatory comments Flatley made toward Baker, and Baker's concerns about Pioneer to both Human Resources and the plant manager, Dan Fontaine. Id. ¶¶ 17-18.

Pioneer allegedly later questioned Baker via email about the amount of work Baker was giving other contractors. *Id.* ¶ 19. Not surprisingly, Baker responded that it was inappropriate for Pioneer to question how much work was given to other contractors. *Id.* Baker alleges that, one day after the email exchange, he received a negative "out-of-cycle" (that is, unscheduled) performance review from Flatley. *Id.* ¶ 20. Baker contested the review with HR, which led to a series of interactions with HR

---

[2] Citations to the docket are indicated by "R." followed by the docket entry and paragraph or page number.
[3] The complaint does not explicitly allege that Baker worked at the Springfield facility, but S&W asserts that fact without contradiction by Baker.

2

managers Ann Glica and Ed Suraci, along with Fontaine and Flatley. *Id.* ¶¶ 25, 27, 29-36. Baker alleges that Glica told Baker not to report Flatley's receipt of bribes to Fontaine, and Suraci advised him not to discuss his bribery allegations with anyone except Robert Cicero, a member of S&W's legal department. *Id.* ¶¶ 27, 37.

Flatley and Baker's relationship deteriorated even further. Baker alleges that Flatley falsely accused him of underperforming, instructed him not to report a problem that he found with the finish of a part, and insulted Baker in front of others. *Id.* ¶¶ 45-62. In June 2014, Baker received his annual performance review from Flatley; the review again criticized Baker's performance. *Id.* ¶ 64. Baker then met with Flatley, Fontaine, and the Vice President of HR, Anne Bruce, to discuss the review. *Id.* ¶ 68. Baker alleges that he was only given the chance to speak about one issue during this meeting. *Id.* .

Around the same time, in-house counsel Cicero informed Baker that he had investigated Baker's allegations of the bribes and was unable to find anything actionable. *Id.* ¶ 65. Cicero allegedly encouraged Baker to quit, offering him two weeks' severance. *Id.* ¶ 71. When Baker refused, he was placed on administrative leave. *Id.* ¶¶ 71-73. In August 2014, Baker informed S&W that he had filed a complaint with the Occupational Safety and Health Administration (OSHA) for retaliation in violation of the Sarbanes-Oxley and Dodd-Frank Act. *Id.* ¶¶ 77-78. Baker was then fired in September 2014. *Id.* ¶ 79.

An OSHA investigator did not find evidence substantiating Baker's claims, and Baker appealed the finding, requesting a hearing in front of an Administrative Law

3

Judge. R. 11, Mot. Transfer at 4. Baker litigated the case in front of the ALJ for fourteen months before he voluntarily dropped it. R. 17, Plf.'s Resp. at 6.

Baker then brought suit in his then-home venue, the Northern District of Illinois, alleging that S&W retaliated against him for raising violations of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, *et seq*, and the Dodd-Frank Wall Street Reform & Consumer Protection Act, 15 U.S. § 78u-6(h)(1), *et seq*. Compl. ¶¶ 89-123. Baker also alleges that S&W wrongfully fired him and retaliated against him in violation of Massachusetts public policy. *Id.* ¶¶ 124-140. S&W now moves to transfer the case to the United States District Court for the District of Massachusetts as the more convenient forum. Mot. Transfer.

## II. Legal Standard

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). To justify a transfer of venue, several factors must be satisfied: (1) venue must be proper in the transferor district, (2) venue would be proper in the transferee district, (3) the transferee district would be more convenient for the parties and witnesses, and (4) transfer would serve the interests of justice. *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009); *see also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 n.3 (7th Cir. 1986). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience

4

and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (cleaned up);[4] *see also Coffey*, 796 F.2d at 219 ("The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge."). The moving party has the burden of establishing "that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219–20.

### III. Analysis

Neither party contests that venue is proper in this District or in the District of Massachusetts.[5] So the Court must assess whether the transfer would provide for the convenience of the parties and witnesses and serve the interests of justice.

### A. Convenience

Courts consider "the availability of and access to witnesses, . . . each party's access to and distance from resources in each forum[,] … the location of material events[,] and the relative ease of access to sources of proof" when evaluating the convenience factor. *Research Automation, Inc. v. Schrader–Bridgeport Int'l., Inc.*, 626

---

[4]See Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[5]There is some reason to doubt that venue is proper in this District because S&W might not be subject to specific personal jurisdiction in Illinois. *See* 28 U.S.C. § 1391(b) (venue proper where defendant resides); § 1391(c)(2) (corporate defendant resides in any district in which it is subject to personal jurisdiction). Nothing in this case's events suggests S&W is subject to specific jurisdiction here, and a defendant is only subject to general jurisdiction where, at most, it is incorporated or where it has its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014*); see also Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 90 N.E.3d 440, 446 (Ill. 2017) (invalidating portion of Illinois' long-arm statue that authorizes a court to exercise jurisdiction in any action against a defendant "doing business within this State."). S&W is incorporated in Delaware and its principal place of business is in Springfield, Massachusetts. Compl. ¶ 3. But because S&W does not raise the issue, there is no need to definitively decide it.

5

F.3d 973, 978 (7th Cir. 2010) (cleaned up). A plaintiff's choice of forum is also given substantial weight, particularly when it is his home forum. *See In re Nat'l Presto Indus.*, 347 F.3d 662, 664 (7th Cir. 2003); *Brandon Apparel Grp. v. Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999). But the home-forum choice is readily outweighed in this case by the convenience of almost all the other relevant witnesses.

First, S&W argues, and Baker concedes, that the important events in this case all took place in Massachusetts. Plf.'s Resp. at 3-4. Flatley's alleged misconduct, the subsequent investigation, and Baker's firing all happened at S&W's facility in Springfield, Massachusetts. R. 17.1, Decl. of Earl Baker ¶¶ 9, 11-37. Indeed, really nothing at all in this case happened in Illinois. This factor weighs heavily towards transfer to Massachusetts.

Second, the Court must consider the convenience of the witnesses, which is viewed as the most important factor in transfer motions. *See First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006) (cleaned up). Indeed, because party witnesses are presumed (in most cases) to appear voluntarily, convenience of *non*-party witnesses is weighed more heavily than convenience of party witnesses. *See id.* The Court considers "the number of witnesses located in each forum and the importance of each witness' testimony" when assessing this factor. *Id.*

S&W identified eleven witnesses in the proceedings before the ALJ. R. 11.3, ALJ Pre-Hearing Submission at 7-8. The key non-party witnesses S&W identifies are Bruce, the former VP of HR at S&W, and ex-S&W supervisor Flatley, the witness around whom this whole controversy is centered. *Id.* at 7. Flatley lives in

6

Massachusetts. Bruce lives in Nevada, making his travel to Illinois or Massachusetts comparably convenient. *Id.* Baker likewise identifies key witnesses, and his list includes many of the same people with the addition of Suraci, a key (former) HR employee to whom Baker reported Flatley's misconduct. Plf.'s Resp. at 8; Compl. ¶¶ 29, 34-38. Suraci no longer works for S&W and is therefore a non-party witness. Plf.'s Resp. at 8. He lives in Massachusetts. *Id.* Because most of the important witnesses, including the *non*-party witnesses, reside in Massachusetts rather than Illinois, this crucial factor weighs in favor of transfer.

Next, the Court must analyze the parties' relative ease of access to and distance from resources. When assessing this factor in each forum, the Court should consider the relative financial impact to the parties and the parties' respective residences. *See Brandon Apparel*, 42 F. Supp. 2d at 834. Obviously, S&W's employee-witnesses would find it more convenient to litigate in Massachusetts. In response, Baker argues that he has incurred "significant legal expenses" in litigating this matter, and it would be "financially ruinous" for him to find counsel in Massachusetts. Plf.'s Resp. at 5-6. But, as S&W points out, Baker does not explain why he would lose his counsel if he were to litigate in Massachusetts, given that his current counsel has experience litigating out-of-state. R. 18, Def.'s Reply at 2-3. Baker further argues that transfer would be "the death knell for [his] right to have [his] day in Court." Plf.'s Resp. at 6. It is true that there would be travel expenses when Baker would need to appear in court, but there is no reason to think that Baker must make continuous appearances in Massachusetts. It must also be said that Baker did litigate the

7

underlying dispute in front of an administrative law judge for fourteen months. He offers no explanation as to why he did not file the lawsuit right off the bat and instead put many eggs into the administrative-proceeding basket. Although the Court is sympathetic to Baker's financial troubles, those troubles are not nearly enough to tip the balance of convenience in his favor.

Fourth, the Court must weigh the relative ease of access to sources of proof in each venue. S&W argues that because no source of proof is located in Illinois and all records of investigation and of Baker's employment are located in Springfield, Massachusetts, this factor should weigh heavily toward transfer. Mot. Transfer at 9-10. But, as Baker points out, records are mostly produced electronically nowadays, so the location of the suit has little impact on the convenience of the parties. Plf.'s Resp. at 7 (*citing Ariel Inv.*, 2015 WL 13653007 at *12.); *see also Qurio Holdings, Inc. v. DISH Network Corp.*, 2015 WL 536002, at *3 (N.D. Ill. Feb. 9, 2015). This factor is therefore neutral with respect to transfer.

Lastly, the Court must consider the plaintiff's choice of forum. Although a "plaintiff's choice of forum should rarely be disturbed," *Nat'l Presto*, 347 F.3d at 664, particularly when it is plaintiff's home forum, *Brandon Apparel*, 42 F. Supp. 2d at 833, S&W argues that plaintiff's choice of forum is given minimal deference when another forum has a stronger relationship to the dispute, Mot. Transfer at 7 (citing *Chicago, Rock Island, & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955)). Baker, on the other hand, argues that a plaintiff's choice of forum is given minimal deference only when it is not plaintiff's home forum. Pl. Resp. at 2-3 (citing *Ariel*

8

*Investments, LLC v. Ariel Capital Advisors LLC*, 2015 WL 13653007, at *4 (N.D. Ill. Oct. 29, 2015)).

In *Ariel Investments,* the district court denied the defendant's motion to transfer when plaintiff's choice of forum was, as it is here, his home state. *Ariel Investments*, 2015 WL 13653007, at *4. Courts deciding cases in the same time frame as *Ariel Investments*, however, have given less deference to the plaintiff's preferred forum when the relevant events happened elsewhere, even when the plaintiff's choice was his home forum. *See Wedi Corp. v. Seattle Glass Block Window, Inc.*, 2018 WL 1794771, at *5-6 (N.D. Ill. Apr. 16, 2018); *Fed. Trade Comm'n v. Acquinity Interactive*, 2014 WL 37808, at *2 (N.D. Ill. Jan. 6, 2014). Further, in *Ariel Investments*, at least some of the material events at issue occurred in plaintiff's choice forum. Although Baker's choice of forum is his home forum, *none* of the events in this dispute happened in Illinois. This waters down the strength of the deference owed to Baker's choice of forum.

In sum, because Baker's choice of forum is afforded less deference, three elements weigh in favor of transfer, and one element is neutral, the overall convenience factors weigh towards transfer. The Court next turns to the interest of justice factors.

### B. Interests of Justice

The "interests of justice" analysis relates to the efficiency of the overall court system. *See Research Automation*, 626 F.3d at 978 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 626–27 (1964)). In analyzing whether transfer would serve the interests of

9

justice, courts look to "docket congestion and likely speed to trial in the transferor and potential transferee forums[,] … each court's relative familiarity with the relevant law[,] … the respective desirability of resolving controversies in each locale[,] … and the relationship of each community to the controversy." *Id.* (collecting cases). The interests of justice also may be determinative, and transfer may be warranted even when the convenience of parties and witness analysis comes out the other way. *Id.* (citing *Coffey*, 796 F.2d at 220.) Here, like the convenience factors, the interests of justice factors also weigh in favor of transferring this case to Massachusetts.

First, the Court looks at docket congestion and the relative speed to trial in the two venues. When assessing the speed at which the case will go to trial, courts look to two statistics: the median speed of filing to disposition and median speed of filing to trial. In September 2018, the median speed of filing to disposition was 7.6 months in the Northern District of Illinois and 20.8 months in Massachusetts. The median speed of filing to trial was 37.8 months in the Northern District of Illinois and 31.9 months in the District of Massachusetts. Federal Court Management Statistics for the U.S. District Courts, (Sept. 2018), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2018.pdf. These statistics do not point to significant differences in efficiency in either venue. Baker argues that this District's participation in the Mandatory Initial Discovery Program will expedite the discovery process, Pl.'s Resp. at 9-10, but, given that at least part of the discovery has already been completed in Baker's OSHA proceeding, it is doubtful that the Program will make discovery proceed any faster. And Baker can always request an expedited

10

discovery schedule, regardless of the venue. This factor is therefore neutral with respect to transfer.

Second, the Court must consider the respective familiarity with the relevant law in each venue. When it comes to applying federal law, neither this Court nor the District Court of the District of Massachusetts is at an advantage. *See Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1065 (N.D. Ill. 2015). But Baker's Massachusetts state law claim makes a difference. A federal district court is often more familiar with the law of the state it is sitting in than the law of another state. It is true, however, that federal courts generally have experience applying a variety of state laws. *See Jaramillo*, 664 F. Supp. 2d at 917. Courts thus look at the specific law at issue when considering this § 1404(a) factor. When the law is neither complex nor unsettled, the interests of justice remain neutral. *See Guignard v. Nat'l R.R. Passenger Corp.*, 2012 WL 1108242, at *4 (N.D. Ill. Apr. 1, 2012). But this case does present a potentially novel Massachusetts law question. Baker asserts a claim for "wrongful termination and retaliation in violation of Massachusetts public policy" in his Complaint. Compl. ¶¶ 124-40. Public policy considerations as applied to employment practices, however, are generally not well-settled issues of law, and this Court is less equipped to interpret (or to predict) the holdings of Massachusetts's state courts on matters of public policy than is a federal court sitting in that state. This factor therefore weighs towards transfer.

Finally, the Court must consider the desirability of resolving controversies in the respective venues, accounting for the relationship of each community to the

11

controversy. The District of Massachusetts clearly has a greater interest in resolving a controversy that invokes a public policy exception to an at-will termination than does the Northern District of Illinois. Courts have an interest in protecting the rights of the residents of the states in which they sit, *see Ariel Inv.*, 2015 WL 13653007, at *4, but the type of harm Baker alleges here, retaliation for whistleblowing at a company based in Springfield, Massachusetts, is unlikely to visit harm on residents of Illinois. In light of the potentially novel issue of Massachusetts law and Massachusetts' interest in its public policy, it would serve the interests of justice to transfer this case to the District of Massachusetts.

## VI. Conclusion

The Court finds that the convenience of the parties and witnesses, as well as the interests of justice, weigh heavily in favor of transferring the case to the District of Massachusetts. S&W's motion to transfer venue is granted. The Clerk of the Court shall transfer this case forthwith to the District of Massachusetts, Springfield Division.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: January 22, 2019