1               UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS
2                     WESTERN SECTION

3

4   Earl Donald Baker            )
                                 )           19cv30008-MGM
5        vs                      )
                                 )           June 19, 2020
6   Smith & Wesson, Corp.        )
    _____)
7

8                Telephone conference Held Before
                 The Honorable Mark G. Mastroianni
9                  United States District Judge.

10

11  APPEARANCES:

12  On behalf of the plaintiff:  Benjamin C. Rudolf, Murphy &
    Rudolf, LLP, One Mercantile Street, Suite 740, Worcester,
13  MA 01608.

14  John Yo-Hwan Lee, (via phone) Lee & Breen LLC, 188
    Industrial Drive, Suite 403, Elmhurst, IL 60126.
15
    Lisa Breen, (via phone) Lee & Breen LLC, 188 Industrial
16  Drive, Suite 403, Elmhurst, IL 60126.

17  On behalf of the defendant: Connie N. Bertram, Polsinelli
    PC, 1401 I Street, N.W., Suite 800, Washington, DC 20005.
18
    Jeffrey E. Poindexter, Bulkley, Richardson & Gelinas, 1500
19  Main Street, Suite 2700, PO Box 15507, Springfield, MA
    01115.
20
    Ann Makkiya, Assistant General Counsel at Smith & Wesson
21  Corp., 2100 Roosevelt Ave., Springfield, Massachusetts.

22                    Alice Moran, CSR, RPR, RMR
                      Official Federal Court Reporter
23                    United States Courthouse
                      300 State Street, Room 303D
24                    Springfield, MA 01105
                           (413)731-0086
25                    alice.moran@verizon.net

1          THE CLERK:  Case this morning via telephone is

2     Civil Matter 19-30008, Baker versus Smith & Wesson, Corp.

3        Counsel, will you please identify yourself for the

4     record starting with the plaintiff please.

5          MR. LEE:  John Lee, L-e-e, on behalf of

6     plaintiff.

7          MR. RUDOLF:  Ben Rudolf on behalf of the

8     plaintiff.

9          MS. BREEN:  Lisa Breen on behalf of the

10    plaintiff.

11         MS. BERTRAM:  Connie Bertram on behalf of Smith

12    & Wesson.

13         MR. POINDEXTER:  Jeff Poindexter on behalf of

14    Smith & Wesson.

15         MS. MAKKIYA:  Ann Makkiya is on as well.  I'm

16    in-house with Smith & Wesson.

17          THE COURT:  Very good.

18       Anyone else?  We have everyone.  Thank you all for

19    calling in.

20       Christina, you did say our court steno Alice is on

21    the line?

22          THE CLERK:  Correct.

23          THE COURT:  Okay.  All right.

24       I have -- we're carrying today as a status.  I have

25    plaintiff's motion for entry and order on Zoom depositions

1    and for sanctions.  So I have read and I'm reviewing right

2    now again that motion.

3        Is this for depositions in the plural or one

4    deposition that you want to take?

5            MR. LEE:  These are all depositions I believe.

6    As of right now, we've identified either nine or ten so

7    far and we've scheduled one, two, three, four, five, six.

8    So plaintiff and plaintiff's wife and then we scheduled

9    Mr. Cicero, Mr. Suraci, Ms. Salvador, and Mr. Smith.   I

10   am waiting for a date.  I gave them a bunch of dates.

11   We're waiting for a date for Ms. Bruce.

12           THE COURT:  All right.  So you're looking to set

13   up rules and protocols that would apply both ways to all

14   Zoom depositions, Zoom or whatever video conference?

15           MR. LEE:  Sure.  Correct, Your Honor.  I believe

16   I can cut to the chase on this thing.  I believe the

17   defendants reading of our proposal is misstated or

18   misunderstanding.  I'm not -- it's no different than if it

19   was a physical deposition.  If they want to take a break

20   because there's no question pending and the examination or

21   the questioning is paused and they want to take a break,

22   sure.  That would happen at a physical deposition.

23       They're reading the deposition -- my protocol as if

24   unless all attorneys agree, the witness may not go to the

25   washroom.  That's just not true.

1          Obviously nothing should happen while there's a

2     question pending.  And the other really real risk here is

3     any witness -- whether it's defendant's witness, mutual

4     witness, plaintiff's witness -- be coached electronically,

5     text or emails because the only thing that the camera can

6     see is the witness which is why there's basically a

7     proctor involved.

8          The proctor most likely it will be a paralegal but

9     even at a real deposition, a physical deposition, if I

10    were to bring in a law student who sits next to me and

11    manages documents for me and takes notes for me, every

12    party has a right to do that.

13         I'm just saying to make sure that the process and the

14    integrity of the process is protected, either party is

15    allowed to have a proctor physically present where the

16    witness is so that there aren't improper communications to

17    the witness.  That's all.

18              THE COURT:  Who appoints the proctor?  Does the

19    proctor have to be agreed upon between the parties?

20              MR. LEE:  No.  It would be Ms. Bertram or Mr.

21    Poindexter to send one of their employees, one of their

22    parallels.  Mr. Rudolf and I would be able to do the same

23    thing.

24         For example, I would -- a remote deposition Mr.

25    Rudolf would be in Western Massachusetts; Mr. Poindexter

1    would be.  Ms. Bertram could be wherever she wants to be.

2    I would most likely be in Chicago but wherever the witness

3    is, either party is entitled to have a proctor observe the

4    witness because the camera cannot observe everything.  And

5    that's --

6              THE COURT:  When you say entitled, are you

7    citing to some authority?  I haven't heard of a practice

8    or know of the practice but that certainly doesn't mean it

9    doesn't exist.

10             MR. LEE:  Well, I'm going mostly by what we do

11   here in Illinois.  These protocol and these rules are

12   being used in just about every case in Illinois.  A party

13   has a right to have an attorney or an attorney's employees

14   or paralegals present at a deposition.  Even a party could

15   be present at a deposition.  They're entitled to be.

16       So all I'm saying is we just want to have each party

17   -- both parties have the right to have somebody who's

18   accountable to the court and they will be accountable to

19   the court because they are either employees or agents or

20   independent contractors to the lawyers who are accountable

21   to the court, and they would -- they wouldn't go there to

22   object or inject themselves into the process.  They're

23   merely there to observe, a proctor.

24       That's a very common -- it's a protocol that's being

25   done in every court at least around here anyway.  So it

1    seems to me it's uncontroversial and even from the emails

2    and the responses that the defendant has wrote, they don't

3    seem to disagree with it.  They simply think that unless I

4    -- unless all the attorneys agree that a witness may not

5    take a break to go to the washroom or go have a

6    conversation with the lawyer, that's not true.  That would

7    happen even in a physical deposition.

8          THE COURT:  All right.  Well, let me hear Ms.

9    Bertram's position.  Now, of course, part of the reasons

10   why video depositions are taking place is to avoid the

11   necessity of too many people being in close proximity to

12   each other.  This just puts another person in a room.

13         MR. LEE:  Correct, and they would follow social

14   distancing and face masks and all that.

15         THE COURT:  All right.  Attorney Bertram, is

16   there an objection to this or an objection to working this

17   out?  And in your experience is this common protocol?

18         MS. BERTRAM:  I have never heard of a proctor,

19   Your Honor.  My concern with a proctor now hearing what

20   he's proposing, is, you know, what's the value?

21       So we have a process that's been in place for decades

22   for taking depositions so that we have a record and that

23   record is binding on the witness and on the parties and it

24   can be used in court in certain circumstances.

25       And so here we're going to have a court reporter

1    taking down a transcript; we're going to have a

2    videographer taking video, and let's say that the proctor

3    claims that the witness looked over at me and I supposedly

4    moved my mouth no and then the witness said no.  So I

5    would never ever do that, of course, but let's say the

6    proctor claims that happened.  You know, I mean, what's

7    the proctor to do?  I guess they would make a record.  Are

8    they going to state on the record that I just saw Ms.

9    Bertram's lips move?

10            THE COURT:  I mean aren't we just calling

11   whoever -- I mean everyone brings either an assistant or a

12   co-counsel or someone with them usually to a deposition

13   and so now we're just calling them a proctor, but what's

14   really the effective difference between, as was said, a

15   law clerk or a paralegal or someone going to the

16   deposition?

17            MS. BERTRAM:  I just don't -- if you're an

18   attorney, you're entitled to take objections for the

19   record and if you see any misconduct occurring during the

20   course of the deposition, you have an obligation to make a

21   record; otherwise, you waive that objection.

22        So if I saw Mr. Lee passing notes -- which I'm sure

23   he would never do -- to a witness to give them input on

24   what they should say, I would interject on the record and

25   say I just observed Mr. Lee hand a note to the witness.

1    I'd like to know what that note said.  And I would

2    probably put the note up and have the video camera show an

3    image of it and I probably would make a photocopy of it,

4    but I have that right to speak on the record as counsel

5    and I can preserve my objections.

6        So here we just have someone taking notes, writing

7    down objections that they're thinking they're seeing which

8    would not be preserved for the record, would be under the

9    rules waived, and it's just going to lead to all kinds of

10   disputes.

11       I've never had this issue come up before.  I've taken

12   many videotaped depositions; I've taken many remote

13   depositions.  We've been working on a lot of stipulations

14   post COVID-19 or during COVID-19 to address these issues.

15   This has never been a problem before.  We are officers of

16   the court and we're not going to engage in any misconduct

17   during the course of the deposition and we have to trust

18   that process.  And so --

19           THE COURT:  When these video depositions are

20   done, how many camera angles are generally used?

21           MR. LEE:  Just one, Your Honor.

22           THE COURT:  One camera on the person being

23   deposed, but depending on what court stenographer service

24   you're using or video deposition service you're using, in

25   any of the experience of the attorneys on the phone now

1    are there ever multiple cameras used?

2              MR. LEE:  No.

3              THE COURT:  In other words, two angles of a

4    witness?  A front view --

5              MR. LEE:  No.

6              THE COURT:  -- and side view so you capture more

7    of the room?

8              MR. LEE:  No.  Even in a physical videography

9    deposition, there's only one camera usually right on the

10   witness.  Not always right on the witness.

11        To address Ms. Bertram's grief, they don't have an

12   issue with us having a representative at a deposition

13   because we're entitled to have one.  Everybody is.

14        If she is concerned about the making of a record,

15   however that's done, for example, a paralegal could text

16   or email immediately to Mr. Rudolf or me and we make an

17   objection that's preserved for the record.

18        I have been involved in particularly ugly cases where

19   people who are in the conference room during the

20   deposition or even the court reporter have been called as

21   witnesses on various accusations and defenses with respect

22   to improper behavior.

23        The problem here is the witness is in a room and the

24   videographer and the court reporter are not in the room.

25   They're remote.  They're somewhere else.  They could be

1    but they generally are not.  That's the whole point of the

2    remote deposition.

3         So if Ms. Bertram -- whether it's me who wants to be

4    physically in the room with Mr. Baker or Ms. Bertram wants

5    to be physically in the room with Mr. Cicero, they are

6    entitled to it.  They can be there.  By the same token,

7    the other party is entitled to have a representative there

8    to watch them.

9              THE COURT:  So how is this deposition going to

10   work?  If you're talking about people being in the room,

11   we have a witness in a room with the videographer.  Who

12   else is in the room?

13             MR. LEE:  Not a videographer, a laptop usually

14   or a desktop with a camera basically --

15             THE COURT:  Recording.

16             MR. LEE:  -- they hit a link.  The court

17   reporter sends a link to the witness and that activates

18   the Zoom and the court reporter and the videographer are

19   not physically in the room with the witness.  So no one

20   is.  You could have -- if neither side sends a

21   representative, you could have a remote deposition with no

22   one in the room with the witness.

23             THE COURT:  Are you saying these witnesses are

24   going to be engaging in the Zoom -- we're using the word

25   Zoom -- the Zoom or whatever service you're using from

1    some location or just from their home?

2              MR. LEE:  It could be any location so long as

3    there's a good internet connection and typically it's a

4    laptop with a camera right on it, and that's what all

5    these -- whether it's Zoom or Skype that's what all these

6    depositions are happening these dates.

7         I'm just aghast at Ms. Bertram's attempt to say that

8    we shouldn't have this because she agrees that the

9    response be -- that we are entitled to have a

10   representative where the witness is.

11             THE COURT:  Tell me in your experience how this

12   is working out with Zoom depositions.  Someone is being

13   deposed over this Zoom conference.  They're doing it from

14   their home; sitting at their kitchen table.  You're

15   suggesting someone is allowed to be over at that person's

16   house at their kitchen table with them watching them be

17   involved in the video deposition?

18             MR. LEE:  And if that person is uncomfortable

19   having anybody visit their home, they could have it at a

20   conference room.  They could have it at a -- typically

21   it's a conference room or a lawyer's conference room or a

22   company conference room.  They just need to have an

23   internet connection.

24        There's been zero problems with these remote

25   depositions save one issue and that's if they have not a

1    good enough internet connection, a bandwidth issue.  And

2    there's some typically audio issues if you have more than

3    one person, let's say three people in the same room using

4    the same WiFi all connected to Zoom, there's an audio

5    issue, kind of echo and a feedback issue.  That's an audio

6    technical issue.  But other than that, it's just been

7    never an issue and it's never been questioned whether a

8    person could be a representative of a party could be

9    physically where the witness is to observe the witness.

10           MS. BERTRAM:  Your Honor, could I respond to

11    some of the issues that have been raised?

12           THE COURT:  Sure.  Go ahead.

13           MS. BERTRAM:  We don't have an objection to a

14    paralegal or someone who's currently employed by Mr. Lee's

15    firm attending the deposition or his local counsel Mr.

16    Rudolf.  So, you know, we proposed that and it sounds like

17    the parties are in accord on that.

18        Now we have may a different issue as, for instance,

19    the witness him or herself because of COVID-19 does not

20    want that person in their home but we proposed an

21    exception for that.  And so -- but I want to address --

22           MR. LEE:  That can be worked out.  That could be

23    -- these days actually people -- the big court reporting

24    companies if they don't have a laptop, let's say a witness

25    doesn't have a laptop, the court reporting company will

1    provide it.

2              MS. BERTRAM:  That wasn't my point.

3              MR. LEE:  I'm sorry.  So I was thinking like,

4    let's say for example everybody --

5              THE COURT:  Hold on one second.  Please let's

6    let Attorney Bertram finish.

7              MR. LEE:  Sure.

8              MR. BERTRAM:  So my point was not -- I was

9    talking about a witness because of COVID-19 feeling

10   uncomfortable having this representative present in their

11   home, they may be at a high-risk situation.  My concerns

12   were only, number one, the randomness because in the

13   communications back and forth when I asked who this

14   representative would be, he said it could be anyone even a

15   witness.

16       And we're like, well, it really needs to be somebody

17   affiliated with their firm like a paralegal or counsel,

18   not just someone random off the street because we are

19   asking this person to go to someone's personal home and,

20   you know, the concerns about COVID-19.  We didn't want a

21   situation where, for instance, he was hiring somebody

22   through a temp agency to go and monitor the deposition.

23             MR. LEE:  May I respond?

24             MS. BERTRAM:  I have another point that I wanted

25   to make.  So it's just the randomness and then who that

1     would be and so if we can limit this to someone affiliated

2     with the firm, we're comfortable with that.  We have

3     presented that to Mr. Lee prior to him filing the

4     motion.

5             THE COURT:  All right.  So if the person

6     observing for either side -- this will be reciprocal --

7     has a legal affiliation with the lawyer or lawyers

8     representing whichever party, by legal affiliation I mean,

9     I mean, a close enough affiliation that the ethical

10    obligations of the attorney or the law firm representing

11    either side is necessarily involved with that person's

12    presence.

13            MR. LEE:  Sure.  May I respond to what Ms.

14    Bertram just said?  I hate to get personal.

15            THE COURT:  We have to do this quickly.  I have

16    a ten o'clock and I want to make sure I hear you on the

17    other issues.

18            MR. LEE:  Either Ms. Bertram did not read the

19    emails between me and her associate Jack Blum or she's

20    absolutely making things up.  I did not say anyone.  I

21    said people who are employed by or agents of the lawyers

22    who are accountable to the court.  That's what I said in

23    an email written with a CC to Ms. Bertram.

24            THE COURT:  Okay.

25            MR. LEE:  I don't know what to say.

1              THE COURT:  So that's enough --

2              MR. LEE:  Okay.

3              THE COURT:  -- on this issue.

4         Let me just ask one more follow-up question after I

5    say that's enough.

6         What if there is a witness, what's your plan if a

7    witness -- the witness themselves says I'm just

8    uncomfortable having another person near me in my home or

9    near me at some other location?

10             MR. LEE:  Because of COVID, sure.  I've had

11   cases where basically depositions have been put off

12   because of that issue.  We've also had agreements among

13   the lawyers, okay, nobody will be allowed to be in the

14   room with the witness.  The witness is by himself or

15   herself with the laptop, but there's a stipulation and an

16   instruction read to the witness that no one is to

17   communicate with that person during the questioning by

18   electronic means.  And if the parties are comfortable with

19   that, the lawyers are comfortable with that, we can do

20   that.  It's just not an issue to be worked out.

21        I know we're short on time, Your Honor.  Second, the

22   second our motion for sanctions I can really cut to the

23   chase on that.  Their response --

24             MS. BERTRAM:  Your Honor, I have not -- I want

25   to focus on the stipulation since it's important and what

Mr. Lee has not raised are additional restrictions.  He

just mentioned one of them and I thought they might be off

the table but he still seems to be suggesting that we

should have this restriction.

THE COURT:  Which restriction?

MS. BERTRAM:  So he had additional restrictions

that he had added to the stipulation.  Number one is that

the witness may not communicate with anyone during the

examination other than the examining attorney or court

reporter while a question is pending.  That's fine with us

but we have to carve out communications to determine

whether a privilege is implicated.

Number two is he or she may not consult with any

person, firm, or entity during examination -- that's the

same one.  I'm sorry.

He or she may not consult with any written, printed,

or electronic information during the examination other

than information provided by the examining attorney.  We

felt that that restriction would prevent the witness from

consulting notes or materials during a break, during

lunch.  They can and Mr. Lee can certainly ask about it,

but we shouldn't be prohibiting witnesses from looking at

materials that they think would be helpful to their

testimony.

MR. LEE:  I'll work out the language.

```
1              THE COURT:  Once you take a break and then you

2    come back, you start with a follow-up question about

3    during the break did you talk with, consult anyone, do

4    anything to refresh your memory during the break?

5              MS. BERTRAM:  Right.

6              THE COURT:  Right.

7              MS. BERTRAM:  He wants to preclude them from

8    doing it in the first place.

9              MR. LEE:  I do not --

10             COURT REPORTER:  Excuse me, one at a time

11   please.

12             MS. BERTRAM:  The other restriction is that they

13   can't talk to anyone during the course of the deposition

14   and he just mentioned that one, and that would prevent the

15   witness from communicating with me or with anybody else

16   during the deposition.

17        So all of this is too restrictive.  A party is

18   entitled to consult with counsel during breaks.  It may or

19   may not be privileged, and I think we just -- and to

20   respond to his point about the COVID concern, there may be

21   a situation where a witness who has known me for a period

22   or has known another attorney for a period of time.  I

23   provide information about what I have done during

24   quarantine and they feel comfortable with me being present

25   but maybe not another person.  I'm not saying that they
```

1    would do that inappropriately, but a couple of the

2    witnesses are over the age of 65 or otherwise high risk

3    and I don't want to set up rules now that put the

4    witnesses in jeopardy.

5           THE COURT:  I think Attorney Yee (sic) is

6    talking about being able to deal with that.

7       How long will it take you, Attorney Bertram, just to

8    file something very briefly regarding -- I think -- I

9    don't know what I'm going to do.  I'm not going to tell

10   you right now but I think I'm leaning towards allowing

11   some modified version of what Attorney Lee is asking for.

12   But how long will it take for you to give me some

13   objections and alternative proposals to the stipulation

14   that was proposed?

15          MS. BERTRAM:  I would think Tuesday or wednesday

16   works.  Our office is closed today for Juneteenth and so

17   we're closed today, and I'm traveling so I'll be back in

18   the office on Monday or back at work on Monday and can get

19   something to you Tuesday.

20      We hadn't had -- I mean, I want to respond to --

21   because I know this is time sensitive -- at the beginning

22   of this Mr. Lee said that we have five or six depositions

23   that have been scheduled.  That is not the case.  The

24   request for stipulation and then filing of the motion we

25   feel without proper conferral kind of put the whole

1    schedule in a state disarray, and particularly we have not

2    agreed to the dates for Mr. and Ms. Baker's depositions.

3    He proposed that they be conducted on the 24th and the

4    30th of July which is at the end of the deposition period.

5        We need to take his deposition early in the order so

6    that we can determine whether additional third-party

7    witnesses may be necessary.  We've gotten into a quagmire

8    in scheduling because Mr. Lee insists that Mr. Cicero has

9    to go first and that Ms. Bruce and Mr. Suraci go second

10   and third and, you know, everybody's got difficult

11   schedules.  There's travel involved.

12       Mr. Cicero is general counsel of a publicly-traded

13   company and we've got the CEO that's also been noticed,

14   and we ready need to get these depositions -- I think we

15   first get the order in place and then we get the

16   depositions scheduled up.

17       We were willing to offer Mr. Cicero first just to

18   resolve that dispute but we want to take Mr. Baker next,

19   and then we schedule up the depositions in a way that

20   works for counsel and for the witnesses.

21           MR. LEE:  May I respond, Your Honor?  First of

22   all, Ms. Bertram is not reading the question -- the words

23   during the questioning in my proposed stipulation but we

24   can work out the language.  I'm not saying she can't talk

25   to her people or show documents to witnesses during the

1    break.  I'm just saying during the questioning.  That's

2    what the stipulation says, but that's literally working

3    out the language in the stipulation or the order.  That's

4    that.

5        Obviously nobody wants anybody's health at risk.

6    That's that.  Mr. Cicero's deposition is scheduled.  It

7    was scheduled.  They wanted to reschedule it.  It was now

8    rescheduled.  It's Wednesday -- it's rescheduled for

9    witness.  Ms. Bertram is saying she can't get you the

10   language until Tuesday.  Fine, which means that Mr.

11   Cicero's deposition is not going to go on Wednesday.  And

12   she says there's CEOs and some are scheduled, blah, blah,

13   blah, blah.  I'm perfectly okay with reasonable extensions

14   to make sure all these deps get done under the right

15   rules, but they've got to get done.

16            THE COURT:  All right.  So let's do this.

17       The first thing, Attorney Lee, I think in the last

18   interaction I mistakenly called you Attorney Yee.  I'm

19   sorry.

20            MR. LEE:  That's okay.

21            THE COURT:  So get me, Attorney Bertram, your

22   proposal by -- if it's Tuesday, Tuesday close of business,

23   and I'm going to be working on this so it's ready to go so

24   I can plug in and consider in a pretty quick way your

25   proposal and I'll have that order back to you by the end

1    of next week so you should plan accordingly.

2        If the parties can't agree the order of the

3    deposition, please notify the court and the court will set

4    the order.  That's really not a situation you want because

5    once the court does it, it's just not going to be taken

6    into consideration the convenience of all the people.  I'm

7    just going to set an order and that's going to be it.

8        MR. LEE:  Okay.  That's fine, Your Honor.  I

9    know the court is short on time and that's fine.

10        The second issue is all that I would like to do is

11   have it entered and continued because I believe what the

12   response says is we produced these things.  That's what we

13   have.  What we didn't produce what we don't have and that

14   raises an issue and that raises actually expoliation of

15   evidence issue, but that record is not made enough or

16   complete enough to have the court hear it yet.

17        So all I want my motion for sanctions to be, to be

18   entered and continued so that we can make the record

19   better.  The response brief clearly tells me what -- I

20   know what they produced.  My concern has to do with what

21   they didn't produce.  And if the answer is they didn't

22   produce it because they don't have it, that's the answer

23   and that will raise a different issue.  But that issue is

24   sort of premature at this point.

25        THE COURT:  So one more time.  How are you

1    asking that we handle your motion?

2              MR. LEE:  Just to simply enter it and not decide

3    on it until I submit, for example, transcripts of

4    depositions as to what happened to the documents that

5    Smith & Wesson has not produced because it does raise

6    expoliation of evidence issues.

7         So that will have to be -- for example, let's say I

8    ask Ms. Cicero and I ask Mr. Flatley and then I ask Mr.

9    Francis what happened to these fleeing documents and if

10   they say it was there but, you know, maybe -- but

11   obviously there's saying we didn't produce things because

12   we don't have them.  Fine.  That's fine.  A party cannot

13   produce what it does not have.  Then the question becomes

14   why does it not have it.

15             MS. BERTRAM:  The answer is simple.  It's

16   because it was written on the board of dry erase.

17             THE COURT:  If, Attorney Lee, you don't want to

18   get into this today, why do I even need to hear it?  We

19   can just reschedule this.

20             MR. LEE:  Sure.

21             THE COURT:  So it's docketed.  We can either

22   give this a new date right now or just not rule on it

23   right now and you notify the court if you want this put

24   back on for a hearing.

25             MR. LEE:  Sure.  The only thing I would

1    recommend for the court is obviously if the court does

2    this thing about the protocol and the stipulation and all

3    that and the deps are going to be rescheduled, I just want

4    -- obviously it's a burden to the court -- but to set

5    regular statuses so that this thing gets pushed and the

6    status -- because at some point deps have to be completed

7    and people can file whatever motions they feel that they

8    can file.  Then a trial date has to be set and it's got to

9    go.

10        The only thing personally plaintiff requests is sort

11   of some periodic status hearing so that the court can

12   continue to monitor the case.

13        THE COURT:  All right.

14   Attorney Bertram, did you want to say anything about

15   just putting this -- no ruling on this motion for

16   sanctions part of the pleading for today and if we need to

17   have a hearing on it, the court will be notified and set

18   it for a hearing.

19        MS. BERTRAM:  Your Honor, we filed our motion I

20   think a day or two of receiving the motion that Mr. Lee

21   filed.  We would like to -- if it's going to be set for a

22   hearing, we would like the opportunity to draft an

23   opposition to that.

24        THE COURT:  No doubt, of course.

25        MS. BERTRAM:  Right.

1          THE COURT:  But there's no hearing today.  If

2     this is going to be put -- if something can't -- is not

3     worked out to the satisfaction of each side, this will be

4     set for a hearing and I'll say right now set with a

5     hearing with enough time for you to provide a written

6     response, generally a two-week notice.

7          MS. BERTRAM:  Right.  Thank you.

8          THE COURT:  All right.

9       Okay.  To my clerk, Ms. Rivera, let's set this for a

10    30-day status just to check in.  I'm anticipating not much

11    is going to happen at that status, but we'll just check

12    in.  Frankly we'll do 30-day status check-ins for a month

13    or so and then start moving out from there until we have a

14    schedule.

15         THE CLERK:  Monday, July 20th at 9:30 a.m.

16         MR. LEE:  That's fine with plaintiff's

17    counsel.

18         THE COURT:  All right.

19         MS. BERTRAM:  That works for me as well, Connie

20    Bertram.

21         THE COURT:  Very good.

22         MR. LEE:  Thank you very much.

23         MS. BERTRAM:  Thank you, Your Honor.  We really

24    appreciate it.

25         THE COURT:  You will have a ruling on the

1    stipulation by the end of the week, and please notify the

2    court if you're having any trouble scheduling.

3                MR. LEE:  Okay.  Thank you.

4                THE COURT:  Okay.

5                MS. BERTRAM:  Thank you.

6    **(Hearing concluded at 10:03.)**

7    ------------------

8    (The certification of this transcript does not apply to

9    any reproduction of this transcript, unless under the

10   direct control and/or supervision of the certifying

11   reporter.  I assume no responsibility for the accuracy of

12   any reproduced copies not made under my control or

13   direction.)

14

15                       CERTIFICATION

16

17          I certify that the foregoing is a correct

18   transcript of the record of proceedings in the

19   above-entitled matter to the best of my skill and ability.

20

21

22

23   /s/ Alice Moran                    July 19, 2020
     Alice Moran, RMR, RPR
24   Federal Official Court Reporter

25