**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**WESTERN DIVISION**

EARL DONALD BAKER,                    Case No.  3:19-cv-30008-MGM

     Plaintiff,

     vs.                           Honorable Mark G.  Mastroianni

SMITH & WESSON INC.,

     Defendant.

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, Defendant

Smith & Wesson Inc.[1] submits its Reply Brief in support of its Motion for Summary Judgment.

## I.   INTRODUCTION AND SUMMARY

The resolution of this Motion does not require the Court to parse through the evidence submitted

by the Parties.  Under the binding precedent of the First Circuit, Baker cannot sustain a section 806 claim

because he concedes – as he must – that he did not disclose information to S&W about shareholder fraud.

Baker attempts to distinguish *Day v. Staples, Inc.*, 555 F.3d 42 (1st Cir. 2009), claiming for the first time

in over six years of litigation that he reported conduct that violated SEC rules, relying on the "internal

controls" provision in 15 U.S.C. § 78m(b)(5) and company policy.  Plaintiff cannot – legally or factually

– sustain a claim under section 806 based on these claimed reports.

As S&W demonstrated in its opening brief, any claim based on alleged violations of company

policy should be readily dismissed.  *See* ECF No. 115 at 13.  That leaves his singular alleged report to

General Counsel Robert Cicero in April, May or June 2014.  Baker alleges that he told Cicero that a

---

[1] Formerly, Smith & Wesson Corp.

representative of vendor MSC told Baker that MSC reported to S&W that Pioneer had overcharged S&W before Baker was hired.  With respect to this new claim, Baker cannot sustain a section 806 claim because section 78m(b)(5) is not a "rule or regulation" of the SEC.  Even if Baker could tether his claim to a SEC rule (yet undisclosed after over six years of litigation), *Day*, 555 F.3d 42, would preclude it because he admits he did not report shareholder fraud to S&W.  Even putting aside this impediment, Plaintiff could not rely on this new claim because (1) he did not raise and preserve it in the OSHA investigation; (2) he did not disclose it in his pleadings or discovery responses; and (3) even putting aside these impediments, given his admissions in this proceeding, he could not satisfy the essential elements.

## II.  <u>ARGUMENT</u>

### A.  Because Baker Concedes He Did Not Provide Information to S&W Concerning Shareholder Fraud, Summary Judgment Should be Granted in S&W's Favor

S&W demonstrated in its opening brief that Baker's claimed reports of "bribery" and "kickbacks" were not reports of "shareholder fraud" protected by section 806.  ECF No. 115 at 15-17. Apparently recognizing that, given his admissions and the precedent in *Day,* he cannot sustain a claim based on reports of shareholder fraud, Baker repeatedly represents he "has not premised his SOX claim on alleged shareholder fraud," making yet another dramatic pivot.  ECF No. 121 at 6 n.1, 10-11.  Baker now claims – for the first time in the over six years of litigation – that because he allegedly disclosed to S&W violations of the "internal controls" provisions in section 78m(b)(5) and company policy, "the discussion of fraud and the elements of a fraud claim in *Day* is not applicable to his claim."  *Id.* at 11.

*Day*, however, ruled that section 806 claims must be founded on reports of violations of a listed criminal law, SEC rule or regulation, or securities law ***involving shareholder fraud***.  In addressing Day's attempt to connect general accounting principles with a violation of section 806, the First Circuit ruled:

> He has not alleged that the numbers he complained were inaccurate (1) were reported to shareholders, (2) were inconsistent with generally accepted accounting principles ("GAAP"), or (3) constituted fraud. A generalized allegation of inaccuracy in accounting is insufficient to establish a reasonable belief in a violation of GAAP, ***much less a reasonable belief in shareholder fraud***.

*Day*, 555 F.3d at 57 (emphasis added).  The Court further recognized that "merely stating in conclusory fashion that a company's books are out of compliance with GAAP would not in itself demonstrate liability under section 10(b) or Rule 10b-5."

As *Day* recognized, this limitation is necessary to serve the purposes underlying Sarbanes-Oxley. Section 806 "serves to encourage and protect employees who ***report fraudulent activity*** that can damage innocent investors in publicly traded companies."  *Day,* 555 F.3d at 52 (internal quotation and citations omitted) (emphasis added).  The Supreme Court has recognized that, in enacting the "whistleblower regime" of section 806, Congress had "[a] far-reaching objective: It sought to disturb the corporate code of silence that discouraged employees from reporting ***fraudulent behavior*** . . .."  *Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 778 (2018) (emphasis added).  The requirement that the complained of conduct relate to fraud "is crucial" because section 806 "does not extend to every employee complaint about possible improper or even illegal conduct."  *Northrop Grumman Sys. Corp. v. Department of Labor*, 927 F.3d 226, 229 (4th Cir. 2019); *see also Verfuerth v. Orion Energy Sys.,* 879 F.3d 789, 793 (7th Cir. 2018) ("[w]histleblowing is protected by Sarbanes-Oxley ***only if the employee subjectively believed fraud was occurring*** *and* was objectively reasonable in holding that belief.") (emphasis added).

The statute on which Baker now relies only potentially falls into the sixth category in section 806 – *i.e.*, "any provision of Federal law relating to fraud against shareholders."  Although Baker relies in his Opposition on category five, which includes "rules and regulations of the SEC," 15 U.S.C. § 78m(b)(4), a provision of the Foreign Corrupt Practices Act, is ***a federal statute – not a SEC rule or regulation***.  *Wadler v. Bio-Rad Labs., Inc.*, 916 F.3d 1176, 1186 (9th Cir. 2019) ("§ 806's text is clear: an FCPA provision is not a rule or regulation of the [SEC].").  Baker cannot rely on the sixth category because he does not allege – and admits he cannot – the elements of a claim for "fraud against shareholders."  The sixth category is "not a broad, catchall provision" because it "***applies only to information provided that concerns shareholder fraud.***"  *Northrop Grumman,* 927 F.3d at 233

(emphasis added); *see also Livingston v. Wyeth, Inc.*, 520 F.3d 344, 351 n.1 (4th Cir. 2008) ("***We conclude [the category for SEC rules or regulations] also refers to regulations prohibiting fraud***. To conclude otherwise would absurdly allow a retaliation suit for an employee's complaints about administrative missteps or inadvertent omissions from filing statements.") (emphasis added).

Even if Baker had identified an SEC rule or regulation in his Opposition, he would not be able to sustain a claim because he has disavowed any report of shareholder fraud. Baker argues that "reports of violations of SEC regulations do not have to contain allegations of fraud," relying on three district court decisions outside of this Circuit and an OSHA decision. ECF No. 121 at 11-12. Baker cites *Feldman v. Law Enforcement Assocs. Corp*, 779 F. Supp. 2d 472, 492 (E.D.N.C. 2011), for this proposition.[2] This case, however, does not address whether a plaintiff must allege fraud to rely on an SEC rule or regulation under section 806. If the Court had ruled as Baker claims, the decision would be contrary to prior and subsequent precedent in the Fourth Circuit, which recognizes that, to be protected by section 806, the information disclosed must relate to shareholder fraud. *See Northrop Grumman*, 927 F.3d at 229; *Livingston v. Wyeth, Inc.*, 520 F.3d at 351 n.1.

Baker's reliance on *Smith v. Corning*, 496 F. Supp. 2d 244 (W.D.N.Y. 2007), is equally misplaced. In denying the defendant's motion to dismiss, the Court recognized that "[w]histleblower protection extends not only to criminal violations involving securities, bank, and postal fraud situations, but ***violations of any SEC rule or any federal law broadly relating to fraud against stockholders."*** *Id.* at 249 (emphasis added). Because the plaintiff's allegations in *Smith* related to fraud – not merely a SEC regulation – the Court did not dismiss the complaint.

---

[2] Baker's reliance on this case is also misplaced because it was at the motion to dismiss stage. The court subsequently dismissed the plaintiffs' case on summary judgment, ruling that the plaintiffs failed to satisfy their burden of proving a prima facie case. *Feldman v. Law Enforcement Assocs. Corp*., 955 F. Supp. 2d 528, 550-556 (E.D.N.C. 2013). The Fourth Circuit affirmed the grant of summary judgment. *Feldman v. Law Enforcement Assocs. Corp.*, 752 F.3d 339, 349-50 (4th Cir. 2014).

Further, Baker relies on *Leznik v. Nektar Therapeutics, Inc.*, 2007 DOL SOX LEXIS 96 (OALJ Nov. 16, 2007), claiming it stands for the proposition that reports about circumventing internal controls are protected under section 806. The *Leznik* decision addresses the divide in the case law as of 2007 regarding whether the complained-of conduct must implicate shareholder fraud. *Id.* at *20. But, the Court certainly did not resolve the issue. The *Day* decision, two years later, resolved the issue in the First Circuit. *Day*, 555 F.3d at 54.[3]

Additionally, *Collins v. Beazer Homes USA, Inc.*, 334 F. Supp. 2d 1365 (N.D. Ga. 2004), a decision Baker relies upon throughout his brief, can be readily dismissed. Because *Collins* was one of the first district court cases decided after the passage of Sarbanes-Oxley, the Court recognized it was ruling as a "matter of first impression." *Id.* at 1372. The Court acknowledged it was a "close case" because of the "lack of guidance in the case law." *Id.* at 1377. Moreover, despite Baker's claims to the contrary, the Court did not determine that an employer's use of the term "serious allegation" makes an employee's reports covered. Instead, the Court ruled that, given the lack of precedent, summary judgment should not be granted because the employee raised "violations of the company's internal accounting controls in favor of preferential treatment based on personal relationships." *Id.* at 1378.

Lastly, Baker relies in this section and throughout the brief on *Sequeira v. KB Homes*, 716 F. Supp. 2d 539, 550 (S.D. Tex. 2009). The Court recognized that, as of 2009, several administrative opinions and the Fourth Circuit had held that all of the categories in section 806 require fraudulent intent. *Id.* at 551. Thus, the Court ruled that resolution of the motion for summary judgment centered on whether the plaintiff had a "reasonable belief" that the defendant "was ***intentionally deceiving its shareholders***."

---

[3] Baker asserts that *Yang v. Navigators Group Inc.*, 18 F. Supp. 3d 519 (S.D.N.Y. 2014), is instructive because it purportedly "summarily dismissed" *Day*. ECF No. 121 at 12. In a footnote, the *Yang* court simply recognized that, as of 2014, the Fourth Circuit had ruled that the phrase "shareholder fraud" modified all categories of protected activity under section 806 and that the Fifth Circuit had not squarely ruled on the issue. *Id.* at 528 n.2.

*Id.* (emphasis added).  The Court, did not, as Baker claims, rule that reports of "violations of company internal policies" alone are actionable under section 806.  *See* ECF No. 121 at 15.

Because Baker failed to present evidence showing that he provided information concerning one of the six categories of violations enumerated in section 806, summary judgment should be granted.

**B.**      **Baker Failed to Exhaust His New Claim Based on Section 78m(b)(5)**

In its Memorandum, S&W demonstrated that Baker cannot sustain a section 806 claim because he has abandoned the only claims he raised in the OSHA proceeding – *i.e.*, claims of alleged "kickbacks" and "bribery."  ECF No. 115 at 13-16.  Baker's new claim founded on alleged violations of section 78m(b)(5) is even further divorced from the claims he asserted in the OSHA investigation.  During the nearly three years his case was before OSHA, Baker did not even suggest that S&W had violated section 78m(b)(5) or any provision concerning internal controls.  Although Baker notes that he was not represented by counsel for one year during his OSHA appeal, ECF No. 121 at 9, he does not dispute that he was represented by competent counsel throughout the OSHA investigation, including when he filed his complaints and produced his evidence to OSHA.  ECF No. 116 at ¶ 66.

Baker does not dispute any of the evidence concerning the allegations he made or the evidence he presented to OSHA.  *See* ECF No. 121 at 9.  Instead, Baker argues that this alleged violation was not a "claim" he was required to disclose to OSHA to perfect his claim.  Baker argues, without support, that because he alleged "retaliation" in his OSHA Complaint, he is entitled to raise any new allegation or theory of retaliation in the instant litigation.  ECF No. 121 at 9.  Baker does not cite any authority for this proposition or even attempt to respond to the precedent cited by S&W in its opening brief.  *See id.* This argument flies directly in the face of Circuit precedent.

The exhaustion of claims before OSHA is "mandatory, though not jurisdictional, and 'akin to a statute of limitations.'"  *Newman v. Lehman Bros. Holdings* 901 F.3d 19, 25 (1st Cir. 2018).  As this Circuit has made clear, the mere "***fact that a complainant has filed an [OSHA] complaint does not***

***open the courthouse door to all claims of [retaliation]***." *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 71 (1st Cir. 2011) (emphasis added).  Instead, the scope of federal litigation "is constrained by the allegations made in the administrative complaint: ***the former must 'bear some close relation' to the latter***." *Id.* (quoting *Jorge v. Rumsfeld*, 404 F.3d 556, 565 (1st Cir. 2005) (emphasis added)).

The exhaustion requirement provides notice to OSHA and an opportunity for early resolution. *Velazquez-Ortiz*, 657 F.3d at 71.  Thus, "the factual statement in the written charge should have alerted the agency to the alternative basis of [retaliation] that the plaintiff raises for the first time in court." *Id.*; *see also Wallace v. Tesoro Corp.*, 796 F.3d 468, 476 (5th Cir. 2015) (allowing plaintiffs to raise claims for the first time in response to a motion for summary judgment, as Baker is attempting to do here, would "thwart the administrative scheme").

Here, not once during the nearly three years that OSHA was investigating Baker's section 806 claim did Baker (1) claim that he reported to S&W that Pioneer had overbilled S&W before he started working for the Company; or (2) alert OSHA that he reported alleged violations of the internal controls provisions of Section 78m(b)(5).  To permit Baker "to allege one thing in the administrative [complaint] and later allege something entirely different in a subsequent civil action" frustrates the purposes of administrative exhaustion.  *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996).

Baker cites an unpublished district court decision and an OSHA decision, claiming that they establish that "courts have noted that the relevant inquiry is what was communicated to the employer, not what was in the OSHA complaint."  Neither of these cases support that argument.  In *Portes v. Wyeth Pharmaceuticals, Inc.,* which cites the unpublished OSHA decision Baker relies on, the court did not address the issue of administrative exhaustion.  Instead, the decision focused on what constitutes protected activity.  The decision recognized that, because the plaintiff was a chemist, his concerns did not alert "the company [that it] was violating any federal rule or law ***related to fraud against shareholders.***"  2007 U.S. Dist. LEXIS 60824 at **14-15 (emphasis added); *see also Platone v. FLYi,*

*Inc.*, 2006 DOL SOX LEXIS 105 (ARB Sept. 29, 2006) (dismissing claim because plaintiff did not make protected reports to her employer).

Because Baker failed to present any evidence showing he exhausted the claims he asserts for the first time in his Opposition, they should be dismissed.

**C.      Baker Did Not Disclose This New Claim In His Complaint, Initial Disclosures Or Discovery In This Case**

Baker's new claim is also barred because he did not disclose it until he filed his Opposition, nearly 32 months after he filed his Complaint in this case.  Baker did not claim at any point in his briefing, discovery responses or 15-hour deposition, that he reasonably believed that S&W violated the internal controls provisions of section 78m(b)(5) or any other statute or rule:

- Baker mentioned in the factual background section of his Complaint that he learned during his first week of employment that "for roughly one year Pioneer billed S&W for work done on an eight-day work week."  ECF No. 1 at ¶ 11.  He did not allege that he reported this to S&W or that it related to internal controls requirements or shareholder fraud.  ECF No. 1 at ¶ 11.

- As discussed in S&W's opening brief, Baker did not provide any response to S&W's interrogatory requesting that he identify any reports he made to S&W "in which [he] communicated allegations of fraud or any . . . violation of any [SEC] Rules or Regulations," even after the Court ordered him to respond.  ECF No. 115 at 10 n.3.

- At his deposition, Baker only claimed he reported violations of SEC rules and regulations by providing information concerning the alteration of a database, a claimed violation that has now been abandoned.  ECF No. 121-1 at 227.

Adding insult to injury, Baker claims that "S&W's implication that Baker had ample opportunity to fully describe all of his reports to S&W is simply not correct."  ECF No. 121 at 9.  There is no question that Baker had "ample opportunity" to identify his alleged protected activity in discovery.  He simply had to respond to S&W's interrogatories – either in the OSHA proceeding or in discovery in this case, *as ordered by this Court and the OALJ –* or testify at his deposition about it.  Baker cannot offer any justification for identifying new bases for his claims until the proverbial "thirteenth hour."

Because he failed to disclose this claimed report, even after being compelled to do so, Plaintiff should not be allowed to raise this new allegation in a transparent (but unsuccessful) attempt to overcome S&W's meritorious motion for summary judgment. *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R.*, 248 F.3d 29, 35-36 (1st Cir. 2001) (affirming lower court's decision to exclude evidence not disclosed in discovery); *Hipsaver Co. v. J.T. Posey Co.*, 497 F. Supp. 2d 96, 103-04 (D. Mass. 2007) (excluding evidence not disclosed in discovery); *see also* Rule 37(c).

### D.   Even If Baker Could Somehow Overcome These Impediments, He Has Failed To Satisfy His Burden of Proof for His Section 806 Claim

#### i.   Baker Failed To Present Admissible Evidence Establishing Material Disputes In Response to S&W's Statement of Undisputed Facts

Even putting aside these legal impediments to his claims, Baker's failure to present admissible evidence in his Opposition satisfying his burden of proof dooms them. "Where, as here, the nonmovant has the burden of proof and the evidence on one or more of the critical issues in the case is . . . not significantly probative, summary judgment may be granted." *Davila v. Corporacion De P.R. Para La Difusion Publica*, 498 F.3d 9, 12 (1st Cir. 2007). Because S&W made an initial showing that no genuine issues of material fact exist, Baker was required to "produce specific facts, in suitable evidentiary form, to establish the presence of a trial worthy issue." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks and citation omitted). "Factual specificity is required; a conglomeration of 'conclusory allegations, improbable inferences, and unsupported speculation' is insufficient to discharge the nonmovant's burden." *DePoutot v. Raffaelly*, 424 F.3d 112, 117 (1st Cir. 2005) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)).

Further, Local Rule 56.1 requires that a party opposing summary judgment include a "concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." L.R. 56.1 Unless properly controverted, the moving party's statement of undisputed facts is deemed admitted. *Id.* To be

properly controverted, the cited evidence must be admissible.  Fed. R. Civ. P. 56(c).  That is, the "facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, 'evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment.'"  *Noviello v. City of Boston*, 398 F.3d 76, 84 (1st Cir. 2005).

In his response to S&W's Statement of Undisputed Facts ("SUF"), Baker fails to respond to or unsuccessfully attempts to contest most of S&W's material facts.  *See* Appendix A (S&W's objections to ECF No. 122).  Baker does not respond to the undisputed facts listed in ¶¶ 1-10, 12-18, 20-21, 46, 51, 55-61, 66, 75-76, 78-79, 81, 83-87, and 91-92.  These facts are deemed admitted in accordance with Local Rule 56.1.  Additionally, Baker attempts to dispute certain of the remaining facts by offering inadmissible hearsay, which is not permitted.  *See Noviello*, 398 F.3d at 84.[4]  He also offers testimony through his Declaration that is inconsistent with his prior sworn testimony, which is barred by the "sham affidavit" rule.[5]  *See Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 35 (1st Cir. 2001) (at the summary judgment stage, "issues of fact [cannot] be created simply by submitting a subsequent contradictory affidavit").  As discussed in more detail below, the glaring omissions and deficiencies in Baker's evidence preclude him from meeting his burden of proving the essential elements of a section 806 claim.

### ii.     Baker Failed to Present Evidence Establishing His Reports Were Objectively <u>Reasonable</u>

In its Memorandum, S&W demonstrated why Baker could not show that he formed an objectively reasonable belief that it violated any of the laws enumerated in section 806.  ECF No. 115 at 12-15.  In his Opposition, Baker claims that because of his experience with "purchasing, his reporting of overcharging, the inadequate inventory controls, the violations of company policies, and the accounting inaccuracies were clearly objectively reasonable."  ECF No. 121 at 22.  But nothing about

---

[4] *See* ECF No. 122 at ¶¶ 31, 35-36, 42, 47-48, 50, 53, 64, 67-69, 90.
[5] *See* ECF No. 122 at ¶¶ 24 (*compare with* ECF No. 121-1 at 154-56), 28 (*compare with* ECF No. 115-5 at 23 (stating in his rebuttal, "Kaizens:  I have not done two Kaizens a month but did not know this was expected."), 64 (*compare with* ECF No. 121-1 at 316, 357), 82 (*compare with id.* at 442*)*.

the minimal information known to Baker at the time would have caused a reasonable production manager with Baker's knowledge to conclude S&W had violated any securities rules or regulations.

With respect to the eight-day billing issue, Baker testified that he had a single conversation with Victor Matos, an employee of vendor MSC during his first week of work in April 2013. ECF No. 121 at 1-2. Baker testified that Matos told him that Pioneer had charged S&W for tools distributed by the RoboCribs for an additional day each week. ECF No. 121-1 at 367-73. Baker concedes he did nothing to investigate the issue and did not convey the conversation to anyone for approximately a year. *Id.* When Baker told Cicero about his conversation with Matos in April, May, or June of 2014, Cicero explained to Baker that this issue was "old news" and had been handled by the Company. *Id.* at 371. Baker testified that "I . . . recounted . . . the incident to Mr. Cicero, and Mr. Cicero told me that was old news and . . . that was the end of it." *Id.* Baker testified he did not know what Mr. Cicero did to review the concern and did not receive any other information concerning it. ECF No. 121-1 at 303-05.

Baker, apparently satisfied with Cicero's response, did not provide any additional information to Cicero or anyone else, even though Cicero did not address this concern in his August 20, 2014 investigation report. ECF No. 115-10 at 23. In his response to Cicero, which was written by Baker's counsel, Baker did not mention it, or any other additional evidence Cicero should consider. *Id.* at 26-34. Baker only claimed in that email that S&W violated SOX because reporting "supervisors who accept bribes and kickbacks is protected activity under the Sarbanes-Oxley Act." ECF No. 115-10 at 23.

Baker failed to present any evidence showing that, based on his conversations with Matos and Cicero, a reasonable production manager with Baker's training and experience would have concluded that S&W was engaging in securities fraud or any SEC violations. As with the alleged reports addressed in S&W's opening brief, Baker cannot show his claimed belief was objectively reasonable given his lack

11

of knowledge, lack of investigation, and the information conveyed to him by Cicero concerning it.[6] Moreover, even as Baker conveys the concern, the alleged incident occurred in the past and had been reported to the Company.  Baker could not have formed a reasonable belief that S&W was violating covered SEC laws or regulations in these circumstances.  *See Verfuerth v. Orion Energy Sys.*, 879 F.3d 789, 794 (7th Cir. 2018) ("[a]n executive who advises board members to disclose a fact that the board already knows about has not provided information about fraud.  At most, he has provided an opinion.").

### iii.    Baker Also Fails to Show His Reports Were Subjectively Reasonable

As predicted in S&W's opening brief, ECF No. 115 at 15-17, Baker failed to present any admissible summary judgment evidence demonstrating that he subjectively believed that S&W violated any of the laws or rules enumerated in section 806.  Baker has offered numerous claims and theories to support his claim of subjective reasonableness.  While he was represented by The Employment Law Group in the OSHA proceeding, Baker claimed that he engaged in protected activity by reporting "kickbacks."  ECF No. 115-10 at 16, 18-19.  When he removed the action to federal court, Baker, represented by his current counsel, characterized them as the "Pioneer bribery issues."  ECF No. 1 at ¶¶ 95-96, 102, 104, 112-113, 119, 121.  Then, at his deposition in September 2020, Baker offered yet another potential claim – *i.e.*, wire and mail fraud, two of the federal criminal statutes listed in section 806.  Baker now claims for the first time that he reported violations of an internal controls statute.  As discussed above, at no point in this case, including his 15-hour deposition, however, did Baker ever claim that he ***actually believed*** that S&W violated the internal audit provision identified in his Opposition or any SEC rule or regulation.  *See supra* at 6-9.

---

[6] Baker claims that the Company's actions, investigation and internal audit report support a finding that his concerns were objectively reasonable.  ECF No. 121 at 23-24.  Objective reasonableness is assessed based on the information that was known to the plaintiff at the time he complained. *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 812 (6th Cir. 2015).  Because Baker concedes that he was not aware of the investigation or audit report until September 2020, years after he reported his concerns to Cicero, they do not support his claim.  ECF No. 115-10 at 26.

S&W demonstrated in its opening brief that Baker could not have formed a subjective belief because he admits he has no understanding of the law.  ECF No. 115 at 15-17.  In addition to the extensive evidence Baker's lack of knowledge of securities laws described in S&W's opening brief and Statement of Facts, none of which Baker disputed,[7] Baker readily admitted during his deposition that he did not know whether S&W violated any rules or regulations of the SEC:

> Q:     [I]s it your position that any of the conduct you complained about violated any rule or regulation of the SEC?
> \* \* \*
> A:     ***Again, I don't know the laws pertaining to the SEC.***  But it's my inclination that if the database was altered, yes, and that was reported, that would possibly violate SEC regulations, depending on what they did with it.

ECF No. 121-1 at 525-26 (emphasis added).  In these circumstances, it would be "hard, if not impossible, for someone to hold a subjective belief of a violation if they have no understanding of the law." *Wutherich*, 2020 U.S. Dist. LEXIS 80333, at \*21 (quoting *Barrick v. PNGI Charles Town Gaming, LLC*, 365 F. Supp. 3d 672, 684 (N.D.W. Va. 2019)).

S&W also showed that the timing and context of the information Baker allegedly provided confirmed that he did not form such a subjective belief.  *See supra* at 10-12.  As discussed *supra* at 11-12, the eight-day billing issue was premised on a conversation he had with a vendor during Baker's first week of employment.  Yet, Baker was not concerned enough about the information to conduct any investigation of it, or to report it (1) when he allegedly spoke with Larry Flatley in September 2013; (2) when he allegedly spoke to Glica and Salvador starting in September 2013; or (3) when he spoke to Ed Suraci starting in February 2014.  Indeed, Baker concedes that he did not raise this concern until eleven to thirteen months later during his discussions with Cicero.  And, when he conveyed the information to Cicero, he told him that it was "old news" that had already been addressed by S&W.  *See supra* at 11.

---

[7] *See* ECF No. 116 at ¶¶ 4 and 92.

Citing to three district court decisions and an OSHA decision, Baker claims that the fact that he conceded that he did not know whether certain conduct was illegal, fraudulent or violated SOX does not preclude a finding that he formed a subjective belief.  ECF No. 121 at 25-28.  None of these cases are instructive.  In *Sequeira*, the plaintiff had extensive knowledge and experience in publicly-traded companies prior to his employment with KB Homes and had responsibility for compliance.  This experience, coupled with his allegations, led the court to conclude that he subjectively believed that the company was committing securities fraud.  *Sequeira v. KB Home*, 716 F. Supp. 2d 539, 550 (S.D. Tex. 2009); *see also Barker*, 888 F. Supp. 2d at 298-99 (plaintiff's reports about financial reports could negatively impact shareholders).[8]

Thus, Baker failed to satisfy his burden of showing that he formed a subjective, reasonable belief that S&W violated any of the rules or statutes enumerated in section 806.

### iv.    Baker Failed to Satisfy His Burden of Showing That His Reports Were a Contributing Factor

Baker also failed to present evidence satisfying his burden of showing by a preponderance of the evidence that his reports were a contributing factor in the challenged employment decisions.

S&W showed that Baker could not prove the necessary causal link because there was a 15-month gap between the date when he claims he initially reported concerns about Pioneer and the date of his termination.  *See* ECF No. 115 at 17-18.  Baker attempts to fill this temporal gap, claiming he was "continuously providing additional reports and information," leading to a chain of adverse actions.  ECF

---

[8] *Klopfenstein* also fails to support Baker's position.  There, the ARB remanded the case because it was unclear whether the plaintiff engaged in protected activity, stating that:

> On the other hand, it is possible that Klopfenstein did not engage in protected activity. For example, was Klopfenstein reasonable in believing that his concern about the inventory accounting related to a violation of a SOX-listed law or rule? In light of his position, did his activity suffice to "express" his concern and count as the "provision" of "information"? Because of our decision to remand, we need not decide these questions here.

2006 DOL SOX LEXIS at *36.

No. 121 at 29-30.  Courts have rejected plaintiffs' efforts to show causation by claiming they parroted their complaints or made them over an extended period.  *See, e.g., Feldman v. Law Enforcement Ass'n*, 752 F.3d 348, 350-51 (4th Cir. 2014) (plaintiffs who lodged five categories of reports over a period of 20 months failed to show temporal proximity).

S&W also showed that legitimate intervening acts would break any causal chain between his alleged reports and his termination, including over a year of documented poor performance and increasingly troubling conduct.  ECF No. 115 at 17-19.  In response, Baker relies on what he characterizes as "numerous factual questions" regarding those performance and behavioral concerns. ECF No. 121 at 31.  As discussed below, Baker does not offer any evidence that ***Mark Smith and Dan Fontaine***, the decisionmakers, did not hold an honest belief that Baker's documented poor performance and increasingly volatile behavior warranted termination.  *See infra* at 17-19; *see also Yang v. Navigators Group, Inc.*, 2016 WL 67790 (S.D.N.Y. Jan. 4, 2016) (her reports were a contributing factor because she failed to refute showing that she was terminated for performance problems).[9]

Moreover, Baker's Opposition does not address the impact on the causation analysis of his new claim based on alleged reports of the "internal control" provisions.  According to his own testimony, Baker did not report the eight-day billing issue until a meeting with Cicero in, at the earliest, April 2014. *See supra* at 11.  This report could not have impacted Flatley's decision to give Baker an out-of-cycle review in February 2014 or his alleged mistreatment of Baker in February or March 2014.  Moreover, Baker has not presented any evidence that Cicero conveyed this alleged report to anyone, much less Baker's supervisor Flatley or the two decisionmakers, Smith or Fontaine.  A decisionmaker cannot retaliate against an employee for reports about which he or she had no knowledge.  *Ameen v. Amphenol*

---

[9] It should be noted that because he did not present evidence responding to the statements and evidence in S&W's SUF concerning Flatley and Fontaine's performance concerns before Baker claims he started making reports, they are deemed admitted.  ECF No. 116 at ¶¶ 18, 20, 21, 22, 46 & ECF No. 115 at 17-19.

*Printed Circuits, Inc.*, 777 F.3d 63, 70 (1st Cir. 2015) (knowledge of protected activity critical because "one cannot have been motivated to retaliate by something he was unaware of.") (quotations omitted); *see also Tierney v. Department of Justice*, 95 Fed. App'x 986, 990 (Fed. Cir. 2004) (affirming dismissal of whistleblower protection claims because decisionmakers were unaware of protected disclosures).

In his Opposition, Baker offers what could be characterized as a "direct evidence" theory, claiming that Bruce "admitted" in her September 23, 2014 termination letter that S&W terminated him because of his reports, pointing to a two-sentence summary of the results of her investigation.  ECF No. 121 at 29.  Direct evidence, however, is limited to "statements by a decision maker that ***directly reflect the alleged animus***."  *Melendez-Arroyo v. Cutler-Hammer de Puerto Rico Co.*, 273 F.3d 30, 35 (1st Cir. 2001) (emphasis added).  Bruce was not a decisionmaker.  ECF No. 121-45 at 25.  And, regardless, Bruce did not make any such statement in her letter.  As Bruce explained in her deposition, the purpose of this portion of the letter was to provide a short summary of the investigation report, not to identify a reason for his termination.  ECF No. 121-45 at 24.  Baker's own interpretation of these two sentences does not create a material dispute or satisfy his burden of proof.[10]

Baker also argues that his OSHA Complaint itself was the trigger for his termination, claiming that Bruce, as late as "September 1[9]," was not planning to terminate Baker because she was drafting a response to Baker's rebuttal and left a message about Baker planning his return to work.  ECF No. 121 at 30-31.  In support of its Motion, S&W presented the testimony of Smith and Fontaine that they made the decision to terminate Baker in early September 2014, before S&W received Baker's OSHA

---

[10] Baker also attempts to take issue with Bruce's reference in her letter to Baker's June 2014 evaluation, claiming that the letter "misrepresents that Flatley had concluded in the June 5, 2014 review that Baker was 'incapable of continuing' in his job."  ECF No. 121-52.  This statement, however, is based on a written statement of Flatley included in the documents provided to Baker in connection with his June 2014 evaluation.  ECF No. 115-4 at 45.  The fact that Fontaine and Flatley testified that they had not made the decision to terminate Baker at that point does not show that Bruce's statement was a "misrepresentation."  It is undisputed that Baker was not terminated in June 2014.  ECF No. 121-2 at 132.

Complaint.  ECF No. 115 at 7-8 (citing ECF No. 116 at ¶¶ 88-89).  The evidence that Baker offers does not refute that testimony.  Bruce explained that she used the information in the draft in writing her investigation summary because it included a detailed summary of HR's investigation.  When she printed the draft letter on September 19 to work on her investigation report, the date auto-populated on the print-out.  ECF No. 121-45 at 149-52.  She sent the investigation report to Baker on September 23, 2014, four days later.

Because Baker failed to prove by a preponderance of the evidence that his claimed reports were a contributing factor in his termination, summary judgment should be granted in S&W's favor.

### E.      Baker Failed to Overcome S&W's Showing that It Would Have Made the Same Decision If Baker Had Not Engaged in Protected Activity

As S&W established in its opening brief, S&W presented evidence showing that it would have made the same challenged employment decisions even if Baker had not made his claimed reports.  *See* ECF No. 115 at 18-19.  As part of that showing, S&W proffered (1) the testimony of Baker's supervisors describing in detail their perceptions of Baker's performance and conduct; (2) the testimony of the managers who made the termination decision concerning their understanding of those performance problems and their concerns about Baker's increasingly erratic and threatening behavior; and (3) the testimony and investigation reports of Cicero and Bruce concerning their findings about (a) Baker's challenges to his performance reviews, (b) Baker's allegations of retaliation, and (c) management's concerns about Baker's behavior.  ECF No. 115 at 18-19 (providing summary of evidence in SUF).

In its opening brief, S&W also presented evidence establishing that Smith and Fontaine decided to terminate Baker's employment because of his persistent and far-ranging performance issues and increasingly reckless conduct and allegations concerning Flatley.  ECF No. 115 at 18.  Baker fails to offer any evidence establishing that these decisionmakers did not honestly believe these valid and well-supported justifications for his termination.  In his response to S&W's SUF, Baker does not contest

perceptions of his supervisors concerning his performance.  *See supra* at 15 n.9.  He also does not contest the findings of the investigations of Cicero and HR of his evaluation rebuttals and his claims of retaliation, including HR's finding that that there was no evidence "that his numerous, persistent performance issues identified in his evaluation and discussed with him throughout his employment were the result of allegations concerning Pioneer."  ECF No. 116 at ¶¶ 55, 75-79, 81, 86-87.  For this reason alone, the Court should find that S&W satisfied its burden of showing that it would have terminated Baker's employment even if he had not made any reports.

Even if considered, Baker's evidence fails to create disputed issues of material fact because it offers nothing more than his own opinions and stray statements by and views of employees who did not supervise Baker, who did not have input in his evaluations, and who were not involved in the termination decision.  ECF No. 121 at 37-38; ECF No. 122 at ¶¶ 24, 90.  These opinions are not admissible because they do not show that the decisionmakers' views and conclusions were not honestly held.  *Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 21 (1st Cir. 1999) (opinions of supervisors not involved in evaluation not relevant because it offers "evidence of different opinions by different evaluators under different circumstances");[11] *see also Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 67 (1st Cir. 2008) ("the focus is on the mindset of the actual decisionmaker"); *Webber v. International Paper Co.*, 417 F.3d 229, 238 (1st Cir. 2005) ("an employee's opinion of the efficacy of an employment decision, standing alone, cannot supplant the employer's business judgment").

---

[11] Baker also relies heavily on statements of Bob Francis, who was the Director of Lean Manufacturing for S&W at the time.  Francis, who provided training to Baker concerning his daily pitch boards, had a different view than his supervisors about the quality of Baker's pitch boards.  However, as Francis explained in his deposition, he did not supervise Baker and had no input into his performance evaluations or termination.  ECF No. 121-3 at 37, 56.  The fact that Francis had a different opinion as to one aspect of Baker's performance does not show that Flatley and Fontaine's well-documented views were not honestly held.  S&W objects to ECF No. 121-36 as inadmissible hearsay and because it does not comply with 28 U.S.C § 1746.

Baker attempts to challenge S&W's findings, after months of investigation, that Baker's conduct in the workplace had become increasingly erratic and threatening should be rejected for the same reasons. ECF No. 121 at 38.  Because Baker did not dispute with admissible evidence these investigative findings in his response to S&W's SUF, the arguments in his Opposition on this point should not be considered. ECF No. 161 at ¶¶ 68-75, 88.  Regardless, Baker offers nothing more than his own inadmissible opinions about his conduct and regarding how Cicero and Bruce should have reacted to or handled it.  Baker claims, for instance, that Cicero should not have been concerned about his baseless accusations of rape, murder, and physical threats because Baker offered them to show he was concerned about his safety. ECF No. 121 at 36-37.  Baker's inadmissible opinions fail to show that Cicero and Bruce did not honestly believe that Baker's behavior had become increasingly reckless and threatening.  *See supra* at 15-17.

Baker does not even attempt to address in his Opposition the outrageous statements that decisionmakers considered threatening in Baker's communications with CEO James Debney.  In those emails, Baker, among other troubling statements, referred to S&W employees as "vermin" and "genuflecting butt-kissers," and said that Debney was faced with "death or more death."  ECF No. 115-2.  Baker offers for the first time in his Declaration explanations for certain of these statements, tying them to historical events or explaining what he intended to convey.  ECF No. 123 at ¶ 29.  These explanations and opinions are immaterial and inadmissible.  The only relevant consideration is what the decisionmakers concluded when they reviewed the letters – *i.e.*, that they were understandably troubled by his threatening statements.  S&W should be granted summary judgment for this reason as well.

## F.    Baker's Public Policy Claim Must Fail as a Matter of Law

As discussed in its opening brief, Baker's public policy claim is founded on the same conduct as his section 806 claims.  ECF 115 at 19-20.  In *Day*, the First Circuit upheld the dismissal of a state public policy claim based on alleged violations of SOX:

> In passing SOX, Congress aimed to create comprehensive legislation to fill the gaps in a patchwork of state laws governing corporate fraud and protections for whistleblowers.  It

> would be entirely inappropriate for plaintiff to be able to use a federal statute designed to address the inadequacies of state law to create a new common law cause of action under Massachusetts law.

555 F.3d at 59-60.

In yet another last-minute pivot, Baker argues that "because the wrongful termination claim is based on conduct that has been deemed as criminal by the Massachusetts legislature," it is not barred by the preemptive effect of section 806.  ECF No. 121 at 38.  For the first time, he alleges that his public policy claim rests on his alleged belief that S&W violated Chapter 271, Section 39 of the Massachusetts General Laws, which concerns gifts to influence business affairs.  This new claim, which was not pled in Baker's Complaint, is simply not viable.

Massachusetts's public policy exception is only available to "employees who are terminated for asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)."  *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 145 (1st Cir. 1998).  This exception is "construed narrowly."  *Day*, 555 F.3d at 59.

Baker has offered no evidence showing that he believed S&W violated this criminal statute while he was employed by the Company.  Moreover, he does not even attempt to identify whether or how he "refused to do that which the law forbids."  He simply claims, in a conclusory fashion, "there can be no doubt that the proscribed behavior constitutes a recognized public policy in Massachusetts."  ECF No. 121 at 39.  This Court should reject Baker's last-ditch effort to salvage his whistleblower claims by offering yet another unpled theory that has no basis in the law or fact.

**THE DEFENDANT,**
**SMITH & WESSON INC.**
**By Its Attorneys,**


 /s/ by Connie N. Bertram
Jeffrey E. Poindexter, BBO 631922

Bulkley, Richardson and Gelinas, LLP
1500 Main Street, Suite 2700
P.O. Box 15507
Springfield, MA 01115-5507
Telephone:     (413) 272-6232
Facsimile:      (413) 272-6806
jpoindexter@bulkley.com

and


 /s/ Connie N. Bertram
Connie N. Bertram*
*Bertram LLP*
1717 K Street N.W., Suite 900
Washington, D.C. 20006
Telephone:     (703) 627-1649
cbertram@bertramllp.com

* Admitted *Pro Hac Vice*


### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2021 a copy of the foregoing was served via the ECF system upon all attorneys of record in this matter.



___ /s/ Connie N. Bertram
Connie N. Bertram