# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# WESTERN DIVISION

| | |
|---|---|
| EARL DONALD BAKER, | Case No. 3:19-cv-30008-MGM |
| Plaintiff, | |
| vs. | Honorable Mark G. Mastroianni |
| SMITH & WESSON CORP., | |
| Defendant. | |

### PLAINTIFF EARL BAKER'S RESPONSE IN OPPOSITION TO DEFENDANT SMITH & WESSON CORP.'S MOTION TO INCLUDE CERTIFICATION FOR INTERLOCUTORY APPEAL AND FOR STAY PENDING APPEAL

Plaintiff, Earl D. Baker, for his Response In Opposition to Defendant Smith & Wesson Corp's Motion to Include Certification for Interlocutory Appeal and for Stay Pending Appeal, states as follows:

In its motion, S&W seeks to Amend this Court's order of September 10, 2021 to include a certification for immediate appeal pursuant to 28 U.S.C. §1292(b). The First Circuit has "repeatedly emphasized" that leave to appeal "should be used sparingly and only in exceptional circumstances." *Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005) *citing*, *McGillicuddy v. Clements*, 746 F.2d 76 n.1 (1st Cir. 1984). Such appeals are "hens-teeth rare." *Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004). "Even where all three criteria are established, district courts have unfettered discretion to deny certification if other factors counsel against it." *Id*. The rarity of such certifications was explicitly recognized in *Lawson v. FMR LLC*, 724 F.Supp.2d 167 (D.Mass. 2010), a case cited by S&W, in which the district judge noted that he was granting a certification to appeal for the first time in his 24 years on the bench. *Id*. at 169.

1

As set forth by S&W, §1292(b) allows for an interlocutory appeal of a district court's order if the district court judge is of the opinion that 1) the order involves a "controlling question of law as to which there is a substantial ground for difference of opinion," *and* 2) an immediate appeal from the order may "materially advance the ultimate termination of the litigation." As neither condition can be met here, Baker respectfully requests that this Court deny S&W's Motion.

I. **The Appeal Does Not Involve a "Controlling Question of Law" Nor Would It "Materially Advance the Termination of the Litigation"**

S&W's claims that an appeal in this matter involves a "controlling question of law" and that it may "materially advance the termination of the litigation." "Although technically the question of whether there is a controlling issue of law is distinct from the question of whether certification would materially advance the ultimate termination of the litigation, in practice the two questions are closely connected." *SEC v. Credit Bancorp, Ltd.*, 103 F.Supp.2d 223, 227 (S.D.N.Y. 2000), *citing*, *The Duplan Corp. v. Slaner*, 591 F.2d 139, 148 n.11 (2d Cir. 1978); *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 830 F. Supp. 1549, 1557 (D.N.J. 1993); Charles A. Wright, et al, *Federal Practice and Procedure* § 3930 (1996).

With respect to its first assertion, S&W asserts that a ""question of law is 'controlling' if reversal of the district court's order would terminate the action." (See DKT 130, p.3.) S&W cites to the *Lawson* case wherein the court noted that "the answer to the certified question will prove ***dispositive*** of these cases," *Lawson*, 724 F.Supp.2d at 169, and argues that "the same analysis applies here." S&W wants to it seek an answer from the appellate court as to whether "the protection against retaliation for providing information concerning violations of 'any rule of regulation of the Securities and Exchange Commission' cover 15 U.S.C. §78m(b)(5) and other federal statutes that do not involve securities fraud" and asserts that "[i]f the interpretation offered by Defendant is correct, this case will be over." *Id*.

2

Similarly, with respect to the effect of an appeal and whether such an appeal would "materially advance the termination of this litigation," S&W claims that "a finding that Section 78m(b)(5) in not covered by Section 806 would terminate the litigation because Plaintiff would be unable to establish that he engaged in protected activity." (DKT 130, p. 7-8). However, contrary to S&W's assertion, this litigation would not be "over" should it be allowed to appeal this issue as should S&W be successful in its appeal, Baker's public policy claim would be revived.

In its Motion for Summary Judgment, S&W asserted that because Baker's claim for Wrongful Termination in violation of Massachusetts public policy was "founded on the same alleged conduct" as the SOX claim, it is preempted by SOX. This Court, in its Order of September 10, 2021, agreed with S&W noting that Baker could not state a claim for Wrongful Termination because that claim was "based on the same behavior as his SOX claims." However, if the appellate court determines that the conduct alleged against S&W does not fall within SOX as it does not constitute a violation of an SEC "rule or regulation," then S&W's argument that the Wrongful Termination claim is preempted by SOX, and this Court's agreement with that argument, cannot hold.[1]

Further, as previously noted by Plaintiff, Massachusetts statute Part IV, Title I, Chapter 271, describes "Crimes Against Public Policy." Specifically, Section 39 related to "Gifts to Influence Business Affairs" and prohibits"

> (a) Whoever, in relation to any transaction or matter concerning the business affairs of an employer, principal or beneficiary (1) offers, gives or agrees to give an agent or fiduciary of another person and benefit or anything of value with intent to influence the recipient's conduct, or (2) as an agent or fiduciary, solicits, accepts or agrees to accept any benefit or anything of value from another person who Is not an employee, principal, or beneficiary upon an agreement or understanding that such benefit or thing of value will influence his conduct, shall be punished by imprisonment in the state prison of not more than five years, or by a fine of not more than ten thousand dollars, or both.

---

[1] Should this Court grant S&W's request for an interlocutory appeal on this issue, Baker would seek similar relief as to the Court's order granting summary judgment on the Wrongful Termination claim.

ALM GL ch. 271, ¶ 39.

Massachusetts courts have recognized that, in certain circumstances, an at-will employee may maintain an action against his former employer for wrongful discharge. See *Upton v. JWP Businessland,* 425 Mass. 756 (1997). Further, the Supreme Judicial Court of Massachusetts has noted that "the reporting of suspected criminal activity [should not] be discouraged by the threat of discharge. *Shea v. Emmanuel College*, 425 Mass. 761, 763 (1997). "Termination in retaliation for bringing criminal conduct to a supervisor's attention is a termination in violation of public policy." *Schutz v. Go Ahead Vacations, Inc.*, 1999 Mass. Super. LEXIS 393, *7 (Superior Court, 1999). *See also*, *Mello v. Stop & Shop Cos.,* 402 Mass. 555 (1988) (Supreme Judicial Court assumed, without deciding, that an at-will employee who told his employer of criminal wrongdoing occurring within his company would be entitled to recover for a wrongful discharge).

Chapter 271 clearly describes criminal conduct and, given that the title of the Chapter is "Crimes Against Public Policy," there can be no doubt that the proscribed behavior constitutes a recognized public policy in Massachusetts. Further, if, as asserted by S&W in support of its efforts to seek an appeal, violations of SEC statutes are not conduct that falls within the prohibited conduct enumerated in Section 806 of SOX, Baker nevertheless alleges unlawful conduct under federal statute and criminal conduct under Massachusetts law. S&W's and this Court's only basis for summary judgment on Baker's Wrongful Termination cause of action was that the cause of action is preempted by SOX. If S&W is correct that the conduct alleged against it is not covered by SOX, then the granting of S&W's motion for summary judgment on Baker's Wrongful Termination was improper and the claim must be revived. In any event, a finding by the appellate court in favor of S&W would not termination this litigation, nor would it avoid the need for a trial. As such, the

4

proposed appeal does not present a "controlling question" of law nor would it "materially advance" the litigation.

## II.    There is No "Difference of Opinion" Sufficient to Warrant Appeal

With respect to allowing an interlocutory appeal based on a purported "difference of opinion" among courts, the First Circuit has recognized that such an appeal "might be appropriate when the circuits are divided and a court follows the minority view." *South Orange Chiropractic Center, LLC v. Cayan LLC*, 2016 U.S. Dist. LEXIS 70680, *6 (D. Mass. May 31, 2016) *citing*, *Rodriguez v. Banco Cent.*, 917 F.2d 664, 665 (1st Cir. 1990). Another basis for interlocutory appeal is where the caselaw in the district courts nationwide is divided. *Id. citing, Natale v. Pfizer, Inc.*, 379 F. Supp. 2d 161, 182 (D. Mass. 2005) (finding substantial difference of opinion where the "case law to date demonstrates marked litigant confusion and disagreement"). However, "substantial ground for difference of opinion does not exist merely because there is a dearth of cases." *United Air Lines v. Gregory*, 716 F.Supp.2d 79, 92 (D.Mass. 2010).

Although S&W asserts that "courts in other federal circuits are split on the issue" of whether a violation of an SEC statute constitutes a violation of "any rule of regulation" of the SEC for purposes of §806 of SOX, that is incorrect. The vast majority of cases clearly recognize that allegations of inadequate internal controls and violations of company policies and procedures are sufficient to constitute protected activity under SOX. *Feldman v. Law Enforcement Assocs. Corp*, 779 F.Supp.2d 472, 492 (E.D.N.C. 2011) ("Disclosures made by employees concerning reasonably perceived violations of SEC rules governing internal control standards can constitute protected conduct under SOX."); *Smith v. Corning, Inc.*, 496 F.Supp.2d 244, 248-50 (W.D.N.Y. 2007) (the disclosure that a company was implementing a financial reporting program that was not GAAP-compliant was protected under SOX); *Leznik v. Nektar Therapeutics, Inc.*, 2007 DOLSOX LEXIS

96 (Dept. of Labor SAROX Nov. 16, 2007) ("employees disclosures about efforts to circumvent … internal controls are protected activities, because they address violations of SEC rules"); *Sequeira v. KB Homes*, 716 F.Supp.2d 539 (S.D.Tex. 2009), (court noted that the plaintiff "believes, rightly so, that there is a law requiring companies to maintain internal accounting controls. He believes that [the company] violated this law by failing to follow its own procedures regarding vendor contracts and inventory control" and found that the plaintiff had engaged in protected behavior); *Zulfer v. Playboy Enterprises, Inc.*, 2013 U.S.Dist. LEXIS 199070, *18 (C.D.Ca. 2013) ("Federal courts regularly hold that disclosure of a perceived violation of 15 U.S.C. §78m(b)(5) is SOX-protected as a disclosure related to a violation of a 'rule or regulation of the SEC'"); *Collins v. Beezer Homes USA, Inc.*, 334 F.Supp.2d 1365, 1377 (N.D.Ga. 2004) (plaintiff's disclosures were protected by SOX because "they allege[d] attempts to circumvent the company's system of internal accounting controls and therefore state[d] a violation of Section 13 of the Exchange Act); *Klopfenstein v. PCC Flow Technologies Holdings, Inc.*, 2006 DOLSOX LEXIS 59, *35 (2006) (where plaintiff noticed a discrepancy in the in-transit inventory balances for overseas transactions that "if uncorrected, it would cause a material overstatement of [the company's] assets," ALJ stated that the problems with the inventory discrepancies, "suggested, at a minimum, incompetence in [the defendant's] internal controls that could affect the accuracy of its financial statements. [The plaintiff's] communications thus related to a general subject that was not clearly outside the realm covered by SOX, and it certainly is possible that [the plaintiff] could have believed that the problems were a deficiency amounting to a 'violation'"). The fact that one federal circuit and one district court within that circuit came to a different conclusion is not sufficient to create a "substantial ground for a difference of opinion."

The Ninth Circuit's conclusion in *Wadler* did not create a "substantial gound for difference of opinion."  In *Wadler*, the plaintiff specifically reported to his employer that he believed other employees of the defendant in China had violated the bribery and books and records provisions of the Foreign Corrupt Practices Act ("FCPA").  The Ninth Circuit, reversing the District Court, determined that "although the words 'rule' and 'regulation' could perhaps encompass a statute when read in isolation, the more natural and plain reading of these words together and in context is that they refer only to administrative rules or regulations. … The most obvious explanation is that 'law' encompasses statutes, like the FCPA, whereas "rule and regulation" does not." *Wadler*, 916 F.3d at 1186.

However, SOX prohibits companies like S&W from retaliating against any employee who discloses, *inter alia*, "any conduct which the employee reasonably believes constitutes a violation of . . . any rule or regulation of the Securities and Exchange Commission or any provision of Federal law relating to fraud against shareholders . . . ." 18 U.S.C. § 1514A(a)(1).  Disclosures of FCPA violations constitute protected conduct under Sarbanes-Oxley because the FCPA is a "rule or regulation of the Securities and Exchange Commission."  The FCPA is part of the Securities Exchange Act, 15 U.S.C. §§ 78m(b)(2), 78dd-1, *et seq*, and is enforced by the SEC. 15 U.S.C. § 78ff(c).  The very purpose of the FCPA, and its inclusion in the Securities Exchange Act, is to protect shareholders. *SEC v. World-Wide Coin Inv.*, 567 F. Supp. 724, 746 (N.D. Ga. 1983).

The Court in *Wadler* chose to narrowly construe the protection provided by Sarbanes-Oxley to only extend to regulations propounded by the SEC, not laws enforced by it.  But "rule or regulation *of*" does not mean a "rule or regulation *created by*" or "*adopted by*." Indeed, where the Sarbanes-Oxley Act sought to limit a provision to a rule or regulation *promulgated by* the SEC it

did so expressly. *See* 18 U.S.C. § 1520(b) (referring to "any rule or regulation *promulgated by* the Securities and Exchange Commission").

Like other remedial statutes, whistleblower protections are "interpreted broadly." *See, e.g., Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir. 1999) ("statutes designed to protect individual rights" must be interpreted broadly); *Blackburn v. Reich*, 79 F.3d 1375, 1378 (4th Cir. 1996) ("The overarching purpose of the statute- the protection of whistleblowers- militates against an interpretation that would make anti-retaliation actions more difficult to maintain."). The provisions "a rule or regulation of the [SEC]" must be broadly interpreted to cover all legal requirements enforced by the SEC. The legislative history of Sarbanes-Oxley makes clear that it is directed broadly at misconduct by public companies. *See* 148 Cong. Rec. S1783, S1791, 2002 WL 384616 (daily ed. Mar. 12, 2002) (Sen. Leahy) ("The bill promises to make whistleblower protection the rule rather than the exception for those challenging betrayals of corporate fiduciary duty *enforced by the Securities and Exchange Commission*.") (emphasis added); *see also* 148 Cong. Rec. S6734, S6759, 2002 WL 1532280 (daily ed. July 15, 2002) (Sen. Boxer) ("And finally, it protects whistleblowers who reveal *unethical acts* by the companies for which they work.") (emphasis added). Congress charged the SEC with civil enforcement of the FCPA precisely because FCPA violations result in falsehoods on a company's books and records and violations of internal accounting controls obligations traditionally considered the securities law purview of the SEC. *See* S. Rep. No. 95-114 at 11 (1977).

Moreover, where a statute clearly makes conduct illegal, there is no reason for an agency to issue a regulation parroting the statute's language. When the SEC adopted its promulgated rules regarding falsification of accounting records, *17 C.F.R. § 240.13b2-1*, and preventing officers and directors from making misleading statements to accountants and auditors, *17 C.F.R. § 240.13b2-*

*2*, it made explicit that additional proposed books and records and internal accounting control rules were no longer necessary because "*enactment of the FCPA makes it unnecessary to adopt [them]*." 16 S.E.C. Docket 1143, Release No. 15570, 1979 WL 173674, *1 n. 2 (1979) (emphasis added).

The provisions of the FCPA constitute "rules or regulations" of the SEC within the meaning of the broad protection provided to whistleblowers under Sox. The Ninth Circuit's conclusion to the contrary does not represent a "difference of opinion" sufficient to warrant an appeal on this issue at this juncture of the current proceedings.

For the foregoing reasons the Court should deny Defendant's Motion to Include Certification for Interlocutory Appeal and for Stay Pending Appeal in its entirety.

Respectfully submitted,

EARL D. BAKER

By: /s/ John Y. Lee
    Attorney for Plaintiff

John Y. Lee
Lee & Breen, LLC
188 Industrial Drive, Suite 403
Elmhurst, IL 60126
Tel.: (312) 241-1420
Email: jlee@leebreenlaw.com

By: /s/ Benjamin Rudolf
    Attorney for Plaintiff

Benjamin Rudolf
Murphy & Rudolf, LLP
One Mercantile Street
Worcester, MA 01609
Tel.: (508) 425-6330
Email: brudolf@murphyrudolf.com